**FLEET CREDIT CORPORATION,**
Plaintiff, Appellant,

v.

**Anthony SION, et al.,**
**Defendants, Appellees.**

No. 89–1206.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1989.

Decided Jan. 10, 1990.

Peter A. Biagetti with whom R. Robert Popeo, Elizabeth B. Burnett, John C. Plotkin, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., Bruce W. Gladstone and Cameron & Mittleman, Providence, R.I., were on brief, for appellant.

John Boyajian with whom Boyajian, Harrington & Richardson, Providence, R.I., was on brief, for appellee Anthony Sion.

Matthew F. Medeiros with whom Anthony F. Cottone and Flanders & Medeiros, Inc., Providence, R.I., were on brief, for appellee Lillian Jaeger Sion.

Mark A. McSally with whom Taft & McSally, Cranston, R.I., was on brief, for appellee SEI, Inc.

Marc DeSisto with whom Carroll, Kelly & Murphy, Providence, R.I., was on brief, for appellee Katy Industries, Inc.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and WOODLOCK,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The district court dismissed plaintiff's Racketeer Influenced and Corrupt Organizations Act (RICO) claim on the ground that the complaint failed to demonstrate a "pattern of racketeering activity" as required by 18 U.S.C. § 1962. *See Fleet Credit Corp. v. Sion*, 699 F.Supp. 368, 369 (D.R.I.1988). Since the district court made its ruling, the Supreme Court has issued a unanimous decision in *H.J. Inc. v. Northwestern Bell Telephone Company*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), seeking to clarify RICO's pattern requirement. Based on *H.J.*, we reverse the district court's dismissal of plaintiff's RICO claim and remand so that the court may determine whether to allow plaintiff's pendent-party claims to proceed.

## I.

The amended complaint of plaintiff Fleet Credit Corporation (Fleet) alleges a single scheme devised and executed by Anthony Sion, with the assistance of his wife Lillian Sion, in which the Sions used two jewelry manufacturing companies, Federal Chain Company (Federal Chain) and Baroness, Inc. (Baroness) to defraud Fleet of around $7.5 million in loans during a seven year

---

* Of the District of Massachusetts, sitting by designation.

period from 1978 to 1985. The Sions were the sole shareholders of Federal Chain; Anthony Sion was the sole shareholder of Baroness.

The scheme allegedly involved three separate loan transactions. In 1978, Fleet extended a line of credit to Federal Chain of up to 80 percent of the latter's accounts receivable, not to exceed at any point $4,000,000, and to Baroness of up to 80 percent of its accounts receivable and 50 percent of its inventory, not to exceed at any one point $700,000. In 1980, Fleet loaned Federal Chain another $8,000,000. Finally, in 1983, Federal Chain and Baroness jointly and severally executed a promissory note to Fleet for $5,000,000.

In completing these transactions, the parties are alleged to have agreed to the following: Fleet would receive as collateral a security interest in the two companies' accounts receivable, general intangibles, inventory, machinery, equipment, and fixtures; the Sions would sign personal guarantees and Federal Chain and Baroness would sign cross-guarantees; Federal Chain and Baroness would keep Fleet informed of the financial status of the two companies through periodic reports; and Federal Chain and Baroness would not remove, transfer or destroy collateral.

According to the amended complaint, this latter promise was broken—again and again—as Anthony and Lillian Sion systematically looted Federal Chain and Baroness out of millions of dollars in property and services. In doing so, the Sions allegedly caused to be mailed at least 95 checks. These checks were the means by which the Sions used money from Federal Chain and Baroness to cover their own personal expenses and those of their family.

The two non–RICO defendants, SEI and Katy Industries, are not said to have been part of the scheme until the seventh year. In April 1985, Anthony Sion incorporated SEI and proceeded to convey fraudulently a valuable portion of Baroness and Federal Chain equipment and inventory to SEI. In August 1985, Katy Industries employed Anthony Sion and other Baroness personnel. Anthony Sion then diverted to Katy, among other things, equipment from Federal Chain and Baroness.

On August 25, 1985, due to non-payment of the loans and pursuant to the terms of the financing and security agreements, Federal Chain and Baroness executed voluntary possessory papers and Fleet took possession of the remaining assets of the two companies. Fleet then liquidated the Federal Chain and Baroness assets but was left with an outstanding deficiency of $7,531,495 in principal on its loans.

## II.

In December 1987, Fleet brought this damages action in the District Court for the District of Rhode Island against Anthony Sion, Lillian Sion, SEI, and Katy Industries. In the amended complaint, Fleet pleaded a RICO claim, 18 U.S.C. §§ 1961, et seq., against Anthony and Lillian Sion, and ten non–RICO state law claims against the Sions, SEI, and Katy Industries. In its RICO claim, Fleet alleged that Anthony Sion had injured Fleet's business by using or investing income derived from "a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce. See 18 U.S.C. § 1962(a). Fleet further alleged that both Anthony and Lillian Sion had injured its business by conducting or participating in the conduct of an enterprise's affairs through "a pattern of racketeering activity," see 18 U.S.C. § 1962(c), and by conspiring to violate subsections 1962(a) and (c), see 18 U.S.C. § 1962(d).

In May of 1988, Lillian Sion, Katy Industries, and SEI, Inc. moved to dismiss the amended complaint, asserting, among other things, that Fleet had failed to state a claim upon which relief could be granted. Anthony Sion did not join in these motions.

In a memorandum and opinion, the district court dismissed Fleet's complaint against Lillian Sion, holding that it failed to allege a "pattern of racketeering activity" as required by 18 U.S.C. § 1962. The court also held that it would not exercise pendent-party jurisdiction over the state law

claims against Lillian Sion, SEI, and Katy Industries.

On January 31, 1989, the district court, acting on its own, dismissed the RICO claim against Anthony Sion and entered judgment for all defendants. Fleet appeals.

### III.

We must decide whether the district court erred when it ruled that, accepting Fleet's allegation of facts as true, the complaint had failed to demonstrate a pattern of racketeering activity. We turn first to the relevant language of RICO.

Subsection 1961(5) of title 18 states that a pattern of racketeering activity "requires at least two acts of racketeering activity...." Subsection 1961(1)(B) defines an act of "racketeering activity" to include any act indictable under one of numerous federal criminal provisions, including 18 U.S.C. § 1341, the mail fraud statute.

■ Fleet has alleged the mailing of 95 checks in violation of the federal mail fraud statute. It has thus alleged many more than just two predicate acts which fit within the statutory definition of racketeering activity. This does not, however, end the inquiry. The use of the word "requires"—as opposed to "means"—in section 1961(5) indicates that alleging two acts of mail fraud (or two or more other statutorily defined predicate acts) is necessary but not sufficient to establish a pattern of racketeering activity. See H.J. Inc. v. Northwestern Bell Telephone Company, —— U.S. ——, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989) (Congress intended that RICO have "a more stringent [pattern] requirement than proof simply of two predicates....."); Roeder v. Alpha Industries, Inc., 814 F.2d 22 (1st Cir.1987) ("Racketeering acts, then, do not constitute a pattern simply because they number two or more."). In addition, a party must demonstrate that the predicate acts "are related, and that they amount to or pose a threat of continued criminal activity." H.J., 109 S.Ct. at 2900 (emphasis in original).

We, therefore, look closely at the predicate acts alleged by Fleet to determine (1) whether the acts are related; and (2) whether they could be found to amount to or pose a threat of continued criminal activity.

1. *The Predicate Acts*

■ We begin by looking at the allegations as to the type and number of fraudulent mailings initiated by the Sions. While an appeals court should construe the pleadings in the light most favorable to the plaintiff, *see Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.) *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987), it has no duty to "conjure up unpled allegations" in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss. *Gooley v. Mobil Oil Co.*, 851 F.2d 513, 514 (1st Cir.1988). *See also Natal v. Christian and Missionary Alliance*, 878 F.2d 1575, 1576 (1st Cir. 1989).

In the amended complaint's 23–page section entitled "The Facts," there is no allegation that any of the fraudulent acts or groups of acts purportedly committed by the Sions involved the use of the mails. However, the amended complaint's four-page section entitled "Count One: Violations of RICO by Anthony and Lillian Sion," asserts that during the period 1978–85 the Sions committed multiple violations of the mail fraud statute, 18 U.S.C. § 1341, and that these "included, but were not limited to [the Sions'] causing to be mailed 95 checks identified in Exhibit S of the complaint." Exhibit S is entitled "List of Mailings in Violation of 18 U.S.C. § 1341 (Mail Fraud)." The exhibit lists 86 Federal Chain checks and nine Baroness checks payable to various companies, including Atwood Travel, Master Charge and American Express. The dates of the checks run from October 23, 1981 to February 8, 1985.

While Count One alleges that the Sions' acts of mail fraud "were not limited to" the mailing of the 95 checks, it does not specify what other mailings occurred and when. It is thus impossible to determine whether the other alleged mailings took place at each

phase of the scheme, at only certain phases, or not at all. Given the lack of vital information about other possible mailings, we must assume for purposes of RICO analysis that the only predicate acts relevant to Fleet's claim are the mailing of each of the 95 checks. *Cf. New England Data Services, Inc. v. Becher,* 829 F.2d 286, 292 (1st Cir.1987) (RICO complaint does not satisfy Rule 9(b)'s particularity requirement where "plaintiffs have merely stated conclusory allegations of mail and wire fraud ... with no description of any time, place or content of the communication.").

Fleet's failure to elaborate more fully upon the use of the mails seems to reflect an erroneous belief that other alleged acts of common law fraud were predicate acts irrespective of whether the mails were used. For example, in paragraphs 59 and 60 of the amended complaint, Fleet states that Anthony Sion participated in the conduct of Federal Chain and Baroness through a "pattern of racketeering activity" not only by committing numerous violations of the mail fraud statute but also by engaging in the following acts:

> Sion ... caused Baroness and Federal Chain to borrow on false pretenses money from Fleet, to divert to Sion's own personal use money loaned by Fleet to Baroness and Federal Chain, to divert to SEI and Sion's own personal use property pledged by each company as collateral for its loans, to conceal such diversions from all creditors of each company, and finally to divert to SEI and Katy Industries property owned by Federal Chain and Baroness which constituted the proceeds of the monies advanced by Fleet to Federal Chain and Baroness.

■ However, such acts of common law fraud that do not implicate the mails (or the wires) do not constitute "racketeering activity" under the definition found within the RICO statute. Subsection 1961(1)(B). *See New England Data Services, Inc. v. Becher,* 829 F.2d 286, 291 (1st Cir.1987) ("In RICO, the plaintiff must go beyond a showing of fraud and state the time, place

and content of the alleged mail and wire communication perpetrating that fraud.").

Our pivotal inquiry is thus limited to whether the alleged 95 fraudulent mailings are sufficient to set forth a pattern of racketeering activity. They formed such a pattern (a) if the mailings were related, and (b) if they amounted to, or posed a threat of, continued criminal activity.

### 2. *Relatedness*

■ A plaintiff establishes that predicate acts are related by demonstrating that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Telephone Company,* —— U.S. ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (quoting the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e)). Here, the 95 fraudulent mailings alleged by Fleet are clearly related because they were all part of the same fraudulent scheme. *See id.* 109 S.Ct. at 2906 (plaintiffs satisfy the relatedness requirement because the "acts of bribery alleged are said to be related to a common purpose, to influence Commissioners in carrying out their duties in order to win approval of unfairly and unreasonably high rates for Northwestern Bell."); *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262 (10th Cir.1989) (acts part of an alleged common scheme are related); *George v. Blue Diamond Petroleum,* 718 F.Supp. 539 (W.D.La.1989) (same).

### 3. *Continued Criminal Activity*

The briefs and argument in the instant case suggest confusion as to *H.J.'s* effect on the standard for determining whether predicate acts amount to, or pose a threat of, continued criminal activity. Prior to *H.J.,* this court along with others had implicitly adopted (and the court below applied) a multi-factor, fact-intensive balancing test for determining whether a set of alleged predicate acts were continuous. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22 (1st Cir.1987). In the future, how-

ever, courts should directly follow the Supreme Court's formulation in *H.J.;* the pre–*H.J.* approach is no longer a reliable guide. *See Swistock v. Jones,* 884 F.2d 755, 758 (3d Cir.1989) (language in *H.J.* requires substantial modification of six factor test for continuity). *But see Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., et al.,* 883 F.2d 48, 51 (7th Cir.1989) ("elastic" language in *H.J.* requires only minor adjustments in multi-factor continuity test).

In *Roeder,* we had addressed RICO's "continuity plus relationship" pattern requirement, holding that a single bribe paid in three installments over a short period of time failed to constitute a pattern of racketeering activity under the RICO statute. *Id.* at 31. We cited *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), which presented the following test for determining whether a number of acts constitute "separate criminal transactions," thus establishing continuity:

> Relevant factors include (1) the number [of predicate acts]; (2) the variety of predicate acts; (3) the length of time over which they were committed; (4) the number of victims; (5) the presence of separate schemes; and (6) the occurrence of distinct injuries.

*Id.* at 975 (numbers added). The *Morgan* court stressed that "the doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such … no one factor [is] necessarily determinative." *Id.* at 976. Since *Roeder* and prior to *H.J.,* district courts have applied this test to determine whether continuity exists. *See, e.g., Winer v. Patterson,* 663 F.Supp. 723 (D.N.H.1987); *Roberts v. Smith Barney, Harris Upham & Co., Inc.,* 653 F.Supp. 406 (D.Mass.1986).

■ The teachings of *H.J.* are not exactly the same, however, as those in *Roeder* and *Morgan.* The Supreme Court stated in *H.J.* that to establish continuity, a plaintiff must demonstrate that the related predicate acts "amount to or pose a threat of continued criminal activity." *H.J.,* 109 S.Ct. at 2900. This formulation provides a bifurcated framework for determining con-

tinuity in a RICO claim. A party *may* establish continuity by demonstrating that the predicate acts amount to continued criminal activity. Alternatively, a party may establish continuity by demonstrating that the predicate acts, though not continuous, *threaten* to become so.

**A. "Amount to" Continued Criminal Activity**

■ Predicate acts amount to continued criminal activity when they form a "closed period of repeated conduct," which the Court defined in *H.J.* as follows:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* 109 S.Ct. at 2902. The Court applied this standard to Northwestern Bell's alleged scheme to bribe members of a public commission in order to secure higher phone rates, finding that "the racketeering predicates [the bribes] occurred with some frequency over at least a six year period, which may be sufficient to satisfy the continuity requirement." In so finding, the Court did not allude to the other *Morgan* factors, such as the number of victims or the variety of the acts. *See Swistock v. Jones,* 884 F.2d 755, 758 (3d Cir.1989) (noting that the "Supreme Court made no explicit reference in *H.J. Inc.* to the number of victims or the number of perpetrators as relevant factors in its discussion of continuity, despite the fact that all of Northwestern Bell's customers were arguable victims of the alleged scheme to raise rates."). *H.J.'s* approach leads to the conclusion that a plaintiff who alleges a high number of related predicate acts committed over a substantial period of time establishes that those acts amount to continued criminal activity, irrespective of the other *Roeder/Morgan* factors. *See Walk v. Baltimore and Ohio Railroad,* 890 F.2d 688, 690 (4th Cir.1989) (holding that "[i]n light

of *H.J., Inc.'s* special emphasis [on] the sheer duration of criminal activity ..., we conclude that activity continuing, as alleged here, for a period of ten years, must be considered to have 'extended over a substantial period of time,' hence to constitute long term conduct meeting the pattern requirement") (quoting *H.J.*, 109 S.Ct. at 2902).

■ Here, Fleet alleges that 95 fraudulent mailings were sent over a four and one-half year period. Regardless of how we might have addressed this issue before *H.J.*, we believe this is the type of "long-term criminal conduct" defined by the *H.J.* court as constituting "continued criminal activity." The alleged criminal conduct spans years, not "a few weeks or months." Keeping in mind Congress's "natural and common sense approach to RICO's pattern element," *H.J.*, 109 S.Ct. at 2899, we hold that Fleet's allegations are sufficient to establish continuity.[1]

■ Had the number of acts alleged by Fleet been few or the period of time short, the predicate acts would not have amounted to continued criminal activity. This would be true even if other *Morgan* factors had pointed *toward* a finding of continuity. Too few acts would suggest that the defendants were engaged in only "sporadic activity," *id.* 109 S.Ct. at 2900, and too short a period of time would suggest that defendants were not engaged in "long-term criminal conduct". *Id.* at 2902. *See, e.g., Roeder v. Alpha Industries, Inc.*, 814 F.2d 22,

31 (1st Cir.1987) (single bribe paid in three installments over a short period of time does not establish continuity); *Parcoil Corp. v. Nowsco Well Service*, 887 F.2d 502 (4th Cir.1989) (seventeen falsified reports sent over a period of four months do not establish continuity); *Service Engineering Co. v. Southwest Marine, Inc.* 719 F.Supp. 1500 (N.D.Cal.1989) (submission of one false form and a few misleading letters over a few weeks or months does not establish continuity); *Eastern Corporate Fed. Cred. v. Peat, Marwick, Etc.*, 639 F.Supp. 1532 (D.Mass.1986) (three acts of mail fraud over two month period do not establish continuity).

### B. "Pose a Threat of" Continued Criminal Activity

■ Predicate acts pose a *threat* of continued criminal activity when they constitute "past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 109 S.Ct. at 2902. After qualifying this standard as one that "depends on the specific facts of each case," the Court in *H.J.* offered various ways of demonstrating such a threat, including that of showing "that the predicate acts are a regular way of conducting a defendant's ongoing legitimate business." *Id.* The Court held that the plaintiffs in *H.J.* could establish continuity at trial by showing, among other things, that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business.

---

1. Before dismissing Fleet's complaint, the district court framed the pattern issue as follows:
   The problem facing the courts, then, is how to properly limit private civil RICO actions so as to conform to the Congressional intent of prohibiting organized crime from corrupting legitimate businesses, where the statutory language could easily be read to permit racketeering actions seeking treble damages against respectable businessmen over ordinary contract fraud disputes.
   *Fleet Credit Corp. v. Sion*, 699 F.Supp. 368, 376 (D.R.I.1988). While we are sympathetic to the district court's concerns, we think *H.J.'s* analysis of RICO indeed suggests that the statute, as written, permits RICO actions against "businessmen" (whether or not viewed as "respectable") for "ordinary contract fraud" claims, whenever those claims include specific allegations demonstrating a pattern of mail or wire fraud.

   The ultimate lesson of *H.J.* is that "RICO may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court." *H.J.*, 109 S.Ct. at 2905; *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (although RICO is indeed used against "respected businesses allegedly engaged in a pattern of specifically *identified criminal conduct* ..., this defect—if defect it is—is inherent in the statute as written and its correction must lie with Congress."); *cf.* Rehnquist, *Get RICO Cases Out of My Courtroom*, Wall St.J. May 19, 1989 at A14 col. 4 (stating that "the time has arrived for Congress to enact amendments to civil RICO to limit its scope to the sort of wrongs that are connected to organized crime, or have some other reason for being in federal court.").

Fleet contends that its complaint established a *threat* of continued criminal activity here. We need not reach this argument as we have already determined that the alleged predicate acts amount to continued criminal activity. Fleet has therefore stated a valid claim for relief regardless of whether a threat was posed. *See supra.* Fleet again misapprehends the RICO statute, however. It argues that a threat of continued criminal activity existed because "for seven years the Sions ran the day-to-day business of Federal Chain and Baroness through continuing acts of fraud...." Reply Brief for Plaintiff/Appellant at 10. A threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that the Sions' acts of common law fraud were a regular way of conducting their ongoing businesses. Rather, Fleet must demonstrate that the *predicate acts*—here the acts of mail fraud—were a regular way of conducting the ongoing businesses.

### IV.

The district court refused to exercise pendent-party jurisdiction over the state law claims against Lillian Sion, SEI, and Katy "for the simple reason that no viable federal claim exists in the instant matter to which the state claims could be pendent." *Fleet Credit Corp. v. Sion,* 699 F.Supp. 368, 381 (D.R.I.1988). After making this ruling, the court stated that even assuming that Fleet had alleged a valid RICO claim, it would still refuse to exercise pendent-party jurisdiction over the state law claims against Katy and SEI. The court explained this alternative ruling as follows:

> [T]he purpose of RICO is to protect legitimate businesses from organized crime, not to provide a federal cause of action for state law contract claims. Due to the overbreadth of the statute as written and in contravention of legislative intent, the federal courts may now be faced with a flood of civil RICO actions stemming from ordinary contract fraud disputes. However, this is no reason to allow non-RICO state law claims against parties not before the Court to wash in on the incoming tide. It may be that some civil

RICO abuse is a necessary and uncorrectable evil under the language of the statute; however, the federal judiciary can prevent an exacerbation of this problem by refusing to exercise pendent party jurisdiction.

From this brief discussion of pendent party jurisdiction, it is unclear whether the district court made the requisite finding that as an initial matter it had statutory authority to exercise pendent-party jurisdiction over the claims against SEI and Katy Industries. We decline, therefore, to review the district court's alternative holding, and remand so that the district court may more fully consider this issue, particularly in light of *Finley v. U.S.,* — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Supreme Court's recent opinion regarding pendent-party jurisdiction. *See also Rodriguez v. Comas,* 888 F.2d 899 (1st Cir.1989) (amendments added on Oct. 11, 1989).

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.