974 F.2d 1329
 RICO Bus.Disp.Guide 8077
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Christopher C. TRUNDY, et al., Plaintiffs, Appellants,
v.
Richard STRUMSKY, et al., Defendants, Appellees.
 No. 92-1056.
 United States Court of Appeals,
First Circuit.
 September 3, 1992
 
 Appeal from the United States District Court for the District of Massachusetts
 Christopher C. Trundy on brief pro se.
 Paul J. McDonald, Steinkrauss & McDonald, Sonia S. Baghdady and Gary F. Ritter on brief for appellees.
 Sidney J. Dockser on brief pro se.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 In 1981 appellant Christopher Trundy and appellees Richard and Joanne Strumsky and Edward and Deborah McCormick formed a debt collection agency called National Equity Corporation. Trundy held the majority of the company's stock. The enterprise collapsed in acrimony in 1984. Trundy then sued his four erstwhile co-venturers, along with appellee Sidney Dockser, their lawyer, and Wayne Krupsky, an accountant who had worked for National Equity. He alleged that the six defendants had violated the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., by forcing Trundy out of the company and converting its assets to their own benefit for use in a new debt collection agency called North American Equity. Trundy also asserted a number of pendent state law claims.
 
 
 2
 At length the district court heard and granted Wayne Krupsky's motion for summary judgment. Although the other defendants had not filed dispositive motions, the district court granted summary judgment to them, too, ruling sua sponte that Trundy had failed to create a triable dispute about an essential element of his RICO claim-the commission of a "pattern" of predicate racketeering acts. Trundy appealed. We affirmed the judgment in favor of Krupsky, but remanded the matter with respect to the other defendants after finding that Trundy had not received sufficient notice of the district court's intention to subject his claims against those defendants to summary judgment scrutiny. Trundy v. Strumsky, No. 90-1228 (1st Cir., September 26, 1990).
 
 
 3
 After the remand, the Strumskys, the McCormicks, and Dockser moved for summary judgment. Trundy submitted an opposition and the district court, reiterating its opinion that Trundy had not created a triable issue about the defendants' alleged commission of a "pattern" of racketeering activity, gave judgment to the defense. This appeal followed. We affirm.
 
 
 4
 Before we can discuss the merits of the appeal we must dispose of a jurisdictional matter. The amended complaint named as plaintiffs "Christopher C. Trundy, individually and in behalf of National Equity Corporation." The notice of appeal, however, named only "Christopher C. Trundy, et al." as appellants. It is settled law that a court of appeals "lacks power to entertain an appeal from a party who is not specified in the notice of appeal," and that the term "et al." does not indicate that parties not otherwise designated intend to join the appeal. Kaiser v. Armstrong World Industries, 872 F.2d 512, 513-14 (1st Cir. 1989). Therefore, we take this as an appeal only by Trundy "individually," and not in behalf of the defunct corporation.
 
 
 5
 Trundy accused the defendants of violating two substantive provisions of the RICO statute, 18 U.S.C. § 1962(b) and (c), by committing a "pattern of racketeering activity." His opposition to the defendants' motion for summary judgment described a number of events which he said constituted, and made up the "pattern" of, predicate racketeering acts. With only two exceptions, however, the source of his description was his unverified amended complaint. A party who opposes a motion for summary judgment must establish the existence of a genuine issue of material fact, and in so doing "may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact." Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991). See also Fed. R. Civ. P. 56(e) (party opposing motion for summary judgment "may not rest upon the mere allegations or denials" of his pleadings).
 
 
 6
 Even if we were to credit the unsupported assertions in Trundy's amended complaint, we would not find a RICO pattern in the events he describes. In order to establish a pattern, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). He can establish that the racketeering acts are related by showing that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240. He can establish continuity in either of two ways: (1) by showing that the predicate acts "amount to" continued criminal activity, that is, "by proving a series of related predicates extending over a substantial period of time," id. at 242, or (2) by showing that the predicate acts pose a threat of continued criminal activity in that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are part of an ongoing entity's regular way of doing business." Id.
 
 
 7
 At the core of the amended complaint are allegations that various of the defendants committed eleven acts of extortion in 1984 by threatening Trundy with criminal prosecution, public embarrassment, or (in one case) physical harm if Trundy did not surrender his interest in National Equity. Trundy identified Mr. Strumsky as the source of four of these threats, and says that Mrs. Strumsky made one threat, Mr. McCormick another, and Dockser three; he tells us only that "the defendants" made the other two. Because they had similar methods of commission and a common goal and victim, the alleged instances of extortion are sufficiently "interrelated by distinguishing characteristics" to satisfy the relationship requirement set forth by the Supreme Court in H.J., Inc.
 
 
 8
 The allegations of extortion do not, however, establish the requisite "continuity." First, it is clear that the defendants' acts do not pose a threat of continued criminal activity. By Trundy's own account, the extortion ended nearly eight years ago and nothing in the record even hints at the possibility of its revival.
 
 
 9
 Second, the series of extortionate threats did not amount to continued criminal activity. The Court in H.J., Inc. specifically excluded conduct "extending over a few weeks or months" from its definition of a pattern. 492 U.S. at 242. The extortionate threats here are alleged to have taken place over a period of eight-and-one-half months, beginning in late January 1983 and ending in the middle of September of that year. Their frequency, moreover, can accurately be described as "sporadic." See H.J., Inc., 492 U.S. at 239 (a pattern is not formed by "sporadic activity"). Trundy alleges that the defendants made five threats in the five-day period between January 28 and February 1, one threat later in February, none in March, one in April, none in May or June, one in July, none in August, and the last three in September. Such fitful activity, extending over a period of only several months, does not demonstrate the continuity necessary to form a RICO pattern, see, e.g., Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991) (acts committed over twelve-month period not a pattern); J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 820-21 (7th Cir. 1991) (thirteen months); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1418 (3d Cir. 1991) (eight months); Parcoil Corp. v. Nowsco Well Service, Ltd., 887 F.2d 502, 503-5 (4th Cir. 1989) (four months); Sutherland v. O'Malley, 882 F.2d 1196, 1204-5 (7th Cir. 1989) (five months), especially where, as here, the events are merely the constituent parts of a "single criminal episode." Apparel Art Int'l, Inc. v. Jacobson, No. 91-2070 (1st Cir., June 26, 1992), slip op. at 7-9; cf. H.J., Inc., 492 U.S. at 240 (proof that the defendant "has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into ... continuity").
 
 
 10
 Trundy contends that the relevant events in this case occurred over a period of thirty-four rather than eight-and-one-half months. He obtains the higher figure by counting as predicate acts the alleged filing of a fraudulent tax document by Mrs. Strumsky in September 1985, and the incorporation of the second debt collection agency, North American Equity, in November 1986.
 
 
 11
 Trundy's calculation is inconsistent with the logic of RICO's pattern requirement. We suppose that the incorporation of North American Equity might be deemed "related" to the extortion in an attenuated sense. One can infer relatedness by assuming that the act of incorporation essentially renamed what was once National Equity, and thus represented the coup de grace in a struggle for control of the enterprise that began with the alleged extortion.
 
 
 12
 Yet however related it may be to the earlier threats, the incorporation of North American Equity was not a predicate crime, and if a defendant's misdeed is not "racketeering activity," it cannot form an element of a RICO pattern. See Fleet Credit Corp. v. Sion, 893 F.2d 441, 445 (1st Cir. 1990). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to mean the commission of specific crimes, including mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. We take it that Trundy considers the incorporation fraudulent, but common fraud is not racketeering activity, see Fleet Credit Corp. v. Sion, 893 F.2d at 445, and we cannot assume that the act of incorporation violated either Section 1341 or Section 1343 absent evidence that the fraud was accomplished through use of the mails or interstate wires. The assertions to that effect in Trundy's appellate brief do not suffice. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 n.2 (1st Cir. 1988) ("representations in a brief are an impuissant surrogate for a record showing").
 
 
 13
 The allegedly fraudulent tax filing-whether or not it was accomplished by mail or wire-was not related to the extortion in the sense demanded by the definition of a RICO pattern. According to Trundy, the fraud consisted of the false representation in a tax return that Trundy alone was responsible for National Equity's unpaid taxes; it thus appears to have been aimed not at the hijacking of National Equity, but at saddling Trundy with a debt that properly belonged to the defendants as well. Mrs. Strumsky's effort to avoid tax liability was "too separate, too distinct ... to permit a finding that, taken together with the earlier acts, it is part of a racketeering 'pattern.' " Apparel Art Int'l, Inc. v. Jacobson, supra, slip op. at 12-13.
 
 
 14
 The judgment of the district court is affirmed.