[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

United States Court of Appeals
For the First Circuit

No. 99-1589

ANNETTE B. DEMAURO,

Appellant,

v.

JOSEPH DEMAURO, EDWARD MARTIN, DEMAURO CO., INC., NICHOLAS
DEMAURO, TRI-AREA DEVELOPMENT CO., INC, and JOAN MARTIN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

S. James Boumil, for appellant.

Kathleen M. Morrissey, Zevnik, Horton, Guibord, McGovern,
Palmer & Fognani, LLP with whom Bernard A. Dwork, Kevin P. Scanlon,
Barron & Stadfelfd, P.C., Richard L. Fox, and Carragher & Fox, were
on brief for appellees.

February 16, 2000

BOWNES, Senior Circuit Judge. This case is related to a
lengthy and bitterly fought divorce proceeding in New Hampshire
between plaintiff Annette B. DeMauro and the principal defendant,
Joseph DeMauro. It would appear that the divorce proceedings were
precipitated when Annette discovered that Joseph was having an
affair with the household maid. As far as we know, there has been
no final decree in the divorce proceeding.
Plaintiff filed a six count amended complaint against her
husband and the five other named defendants. Count One alleged
violations of 18 U.S.C. 1961-1968 (1982), the Racketeer
Influenced and Corrupt Organizations Act (RICO). Count Two alleged
conspiracy by the defendants under RICO. 
The balance of the complaint alleged pendent state-law
claims. Count Three alleged intentional infliction of emotional
distress. Count Four alleged breach of fiduciary duty. Count Five
alleged illegal telephonic recordings. Count Six alleged
fraudulent conveyances.
After a lengthy hearing, the district court dismissed the
two RICO counts for failure to state a cause of action. It stated,
inter alia:
What I cannot find is a pattern of
racketeering activity as defined by the RICO
statute. Specifically, what I cannot find
what the plaintiff claims to be a violation of
the wire fraud and mail fraud statutes. 
[W]here this complaint is deficient is that it
does not allege false or fraudulent pretenses,
representations or promises, and to the extent
that it does so allege, those allegations are
not made with the specificity required by Rule
9(b).

The court declined to exercise supplemental jurisdiction
with respect to Counts Three, Four, and Six. The court, sua
sponte, dismissed the federal claim purported to be asserted in
Count Five (entitled "Illegal Telephone Recordings") and declined
to exercise jurisdiction over any state claim purported to be
stated in that count. For the following reasons, we affirm, but on
somewhat different grounds, as we can do. See Acushnet Co. v.
Mohasco Co., 191 F.3d 69, 76 (1st Cir. 1999); see also Cablevision
of Boston, Inc. v. Public Improvement Comm'n of the City of Boston,
184 F.3d 88, 97 (1st Cir. 1999).
I. Standard of Review
We review the district court's decision to dismiss Counts
One and Two of the complaint de novo. See Doyle v. Hasbro, Inc.,
103 F.3d 186, 190 (1st Cir. 1996). We accept as true "all well-
pleaded factual averments and indulg[e] all reasonable inferences
in the plaintiff's favor." Id. The district court's order of
dismissal may be affirmed only if the "facts alleged, taken as
true, do not justify recovery." Id. 
II. The Elements of a RICO Claim
RICO makes it unlawful "for any person employed by or
associated with any enterprise engaged in, or the activities of
which effect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such
enterprises' affairs through a pattern of racketeering . . . ." 18
U.S.C. 1962(c). Section 1964(c) provides that a private party
injured in his business or property as a result of a RICO violation
may pursue a civil claim for treble damages. Although RICO is
silent about what limitations period governs the filing of civil
RICO claims, the Supreme Court has held that civil RICO actions are
subject to a four-year limitations period. See Klehr v. A.O. Smith
Corp., 521 U.S. 179, 183 (1997)(holding that civil RICO claims are
subject to a four-year limitation period contained in 4B of the
Clayton Act the statute of limitations that governs private civil
antitrust actions seeking treble damages). 
For a civil RICO claim to survive a motion to dismiss,
the complaint must allege: "(1) conduct (2) of an enterprise (3)
through a pattern (4) of racketeering activity." Sedima, S.P.R.L.
v. Imrex Co.,Inc., 473 U.S. 479, 496 (1985); see also Doyle, 103
F.3d at 190. "In addition, the plaintiff only has standing if, and
can only recover to the extent that, he has been injured in his
business or property by the conduct constituting the violation."
Sedima, 473 U.S. at 496.
The first requirement that the plaintiff must establish
in order to survive a motion to dismiss is the existence of an
enterprise. See Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir.
1997). An "enterprise includes any individual, partnership,
corporation, association, or other legal entity, and any union or
group of individuals associated in fact although not a legal
entity." 18 U.S.C. 1961(4).
Once the plaintiff establishes the existence of an
enterprise, she must allege a pattern of racketeering activity. 
See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d
786, 788 (1st Cir. 1990) ("Establishing a RICO violation under
either section 1962(a) or section 1962(c), requires proof of a
'pattern of racketeering activity' . . . ."). A pattern of
racketeering activity involves at least two predicate acts, the
second of which must occur within 10 years of the first. See 18
U.S.C. 1961(5); see also Roeder v. Alpha Industries, Inc., 814
F.2d 22, 30 (1st Cir. 1987). This court has stated that "[i]t is
not enough for a plaintiff to file a RICO action, chant the
statutory mantra, and leave the identification of predicate acts to
the time of trial." Feinstein v. Resolution Trust Corp., 942 F.2d
34, 42 (1st Cir. 1991). Predicate acts are acts indictable under
certain specified laws, including the mail and wire fraud statutes.
See McEvoy, 904 F.2d at 788. 
It is well-settled in this circuit that when a plaintiff
relies on predicate acts containing fraud, they are subject to Rule
9(b)'s heightened pleading requirement. See New England Data
Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987)(stating
that Rule 9(b) has been strictly applied where fraud lies at the
core of the claim). Federal Rule of Civil Procedure 9(b) states
that fraud must be pled with particularity. Thus, in order to
survive a motion to dismiss, the plaintiff must state the time,
place, and content of the alleged misrepresentation perpetuating
that fraud. See Ahmed, 118 F.3d at 889.
It is also well-established that a single criminal event
does not constitute a pattern of racketeering activity. See Apparel
Art Int'l, Inc., v. Jacobson, 967 F.2d 720, 722 (1st Cir. 1992);
see also H.J. Inc. v. Northweatern Bell Telephone Co., 492 U.S.
229, 239 (1989)(finding "sporadic activity" does not form a
pattern); Roeder, 814 F.2d at 31 (holding that a single bribe paid
in three installments, each constituting a mail fraud violation,
did not make out a "pattern"). 
Adequately alleging two predicate acts, although
necessary, is not sufficient to establish a "pattern of
racketeering activity." "The use of the word 'requires' as
opposed to 'means' in 1651(5) indicates that alleging two acts
of mail fraud (or two or more other statutorily defined predicate
acts) is necessary but not sufficient to establish a pattern of
racketeering activity." Fleet Credit Corp. v. Sion, 893 F.2d 441,
444 (1st Cir. 1990); see also H.J. Inc., 492 U.S. at 237; Roeder,
814 F.2d at 30 ("It is not enough that defendants may have engaged
in racketeering 'acts'; these acts must constitute a 'pattern of
racketeering activity' as construed under RICO for there to be
liability."). 
Following the Supreme Court's lead in H.J., Inc., 492
U.S. at 238, we have held that a plaintiff seeking to establish a
"pattern of racketeering activity" must establish that the
"predicate acts are related and that they amount to or pose the
threat of continued criminal activity (the 'continuity'
requirement)." Ahmed, 118 F.3d at 889; see also Fleet, 893 F.2d at
444 (holding that a pattern of racketeering activity is formed if
(a) the predicate acts were related, and (b) the predicate acts
amount to, or pose a threat of, continued criminal activity); 
Roeder, 814 F.2d at 30 ("The constituent elements must be
sufficiently related to one another and threaten to be more than an
isolated occurrence.").
To fulfill the relatedness requirement, the predicate
acts must have the "same or similar purposes, participants,
victims, or methods, or otherwise be interrelated by distinguishing
characteristics and not be isolated events." Ahmed, 118 F.3d at
889; see also Fleet, 893 F.2d at 445. In establishing the
continuity prong, the plaintiff must show "either that the related
predicates 'amounted to' continued criminal activity or that there
was, even though the predicate acts did not span a significant
time, a 'threat' or realistic prospect of continued activity in
time yet to come." Ahmed, 118 F.3d at 889 (quoting Feinstein, 942
F.2d at 45).
The Supreme Court in H.J. Inc., 492 U.S. at 241, held
that predicate acts amount to continued activity when they evince
a "closed period of repeated conduct" or "past conduct that by its
nature projects into the future with a threat of repetition." The
Court has defined this as:
a series of related predicates
extending over a substantial period
of time. Predicate acts extending
over a few weeks or months and
threatening no future criminal
conduct do not satisfy this
requirement: Congress was concerned
in RICO with long-term criminal
conduct.

Id. at 242.
We have previously stated that a threat of continued
criminal activity for purposes of RICO is not established "merely
by demonstrating that the [defendants'] acts of common law fraud
were a regular way of conducting their ongoing businesses. Rather,
the [plaintiff] must demonstrate that the predicate acts . . . 
were a regular way of conducting the ongoing businesses." Fleet,
893 F.2d at 448.
With these tenets in mind, we turn to the plaintiff's 
complaint. 
III. Analyisis
Paragraphs 12 through 17 of Count One of the complaint
allege in effect:
Paragraph 12: At the time of their marriage Annette and
Joseph had few assets. Joseph was "in effect bankrupt." In 1975
they left Japan and moved to the Middle East where Joseph sought
opportunities to engage in heavy construction; "an opportunity was
found." 
Paragraph 13: Before taking Annette to the "extreme
hardship" of the Middle East, Joseph promised Annette that they
would "share and share alike" in any success they achieved.
Paragraph 14: Joseph established a bank account for
Annette and himself, first in the Middle East, and then in
Switzerland. Joseph deposited the profits from the business into
"their" account to pay their expenses and "apparently to induce her
to believe that he was maintaining accounts in both names as
promised." Joseph induced Annette to believe, "by his repeated
promises, [that] they would share equally and hold" money earned in
the Middle East for their "mutual benefit and control."
Paragraph 15: Annette enhanced the success of the
business by actually working in the office with Joseph, by
arranging and providing entertainment and social activities for
employees and customers, by providing counseling and psychological
assistance to employees of the company and their families, and by
sharing the physical risk of the location.
Paragraph 16: Joseph, either directly or indirectly,
established bank accounts in foreign jurisdictions in the name of
Nicholas DeMauro. Into those accounts, Joseph deposited or caused
to be deposited profits from the business and joint assets, thus
concealing the assets from Annette. This scheme continues to this
day.
Paragraph 17: Over the years the business earned millions
of dollars by Joseph's own accounting; substantial money was earned
on these profits. Annette did not object to the receipt and
management of these funds by Joseph because he represented that he
was taking care of their monetary affairs and was investing for
both of them.

None of the allegations in paragraphs 12 through 17 show
an enterprise engaged in a pattern of racketeering activity. 
Concealment of assets by a husband from a wife is reprehensible and
may be a crime under certain circumstances but that does not render
it a pattern of racketeering activity perpetuated through an
enterprise. Moreover, paragraph 17 states that "Annette did not
object to the management of these funds by Joseph."

Paragraphs 18 through 21 allege in effect: 
Paragraph 18: Starting in 1976, Joseph started a pattern
of racketeering activity "known as the RICO conduct" which
continues to this day. This pattern of activity was designed to
conceal from Annette the assets accumulated from the business and
to convince Annette and others that the assets were being held
jointly while actually Joseph defrauded her and misled her and
others as to their nature, location, extent and existence.
Paragraph 19: Joseph conspired with the other defendants
in a continuous enterprise continuing to this day. The corporate
defendants were used as shams to further the RICO enterprise. All
the named personal defendants were agents and co-conspirators of
Joseph.
Paragraph 20: Joseph, acting in concert with the other
defendants from time to time, by means of "false pretenses,
representations and 'devices' established bank and investment
accounts in Switzerland, Middle East, France, Liechtenstein,
several states of the United States." Most of these accounts were
established under the names of "straws, sham trusts and phony
foundations." This was all done to conceal the assets from Annette
and other creditors. Thus, assets of Annette, including assets
from her first marriage, were taken from her and concealed.
Paragraph 21: In doing the things alleged in Paragraph
20, Joseph made "extensive use of the wires and mails of the United
States."

Paragraphs 18 through 21 fail to plead fraud with
particularity. Paragraph 18 uses the words "pattern of
racketeering activity," "RICO conduct," and "defrauded," but does
not specify as to when the activity took place and what was done. 
Paragraphs 19, 20, and 21, similarly use broad conclusory language. 
The last sentence of paragraph 20 does not state either the value
of Annette's assets or of what they consisted. We do not doubt
that Joseph made "extensive use of the wires and mails of the
United States" but that is only one factor to consider in
determining the validity of the complaint. As we have stated
previously, to plead fraud with particularity pursuant to Rule
9(b), a plaintiff must state the time, place, and content of the
alleged misrepresentation perpetuating the fraud. Annette fails to
do this.

Paragraphs 22 through 28 allege in effect:
Paragraph 22: Joseph caused property known as 2595 Ocean
Blvd., Rye Beach, NH to be placed in the name of the "Klaidonis
Foundation" despite the fact that a Purchase and Sale Agreement for
the property had been executed in the names of Annette and Joseph. 
Annette had not been informed of the change in ownership of the
property.
Paragraph 23: In operating the Klaidonis Foundation,
Joseph used the wires and mails of the United States to transfer
"in excess of $2 million in interstate commerce in furtherance of
this scheme." The existence of the Klaidonis Foundation was
concealed from Annette and only discovered recently. The existence
of this sham foundation was only discovered after the divorce
action commenced.
Paragraph 24: Exhibit A is a true and accurate copy of
the deposition of the Honorable John Maher (now a judge) concerning
the purchase of the 2595 Ocean Blvd. property. It summarizes the
deposition testimony of Judge Maher in four subparagraphs.
Paragraph 25: Joseph induced Judge Maher to place the
property in the name of the Klaidonis Foundation. This inducement
was obtained by fraud on the part of Joseph.
Paragraph 26: Since January 13, 1988, Joseph has used the
wires and mails of the United States to "contact, instruct and
compensate his foreign agents who hold and maintain the Klaidonis
Foundation for his benefit." This is part of a plan and scheme
through an illegal enterprise which continues to this day. 
Paragraph 27: Joseph has taken the position and has
instructed his attorneys and agents to take the false position that
he has no interest in or knowledge of the Klaidonis Foundation. 
Joseph has an outstanding warrant against him. Joseph makes
constant threats to Annette to the effect that he will abandon any
interest in the Rye Beach property and let his creditors take it
and "auction Annette's interest in the property." This is to
increase Joseph's pressure on Annette and pressure her to settle
all outstanding cases against him, including this one, on his own
terms.
Paragraph 28: On November 16, 1988, Joseph signed a
building permit application listing himself as owner of the
property. This shows that the Klaidonis Foundation is a mere
straw.

We think that paragraphs 22 through 28, construed most
favorably to Annette, set forth sufficient facts to allege one 
RICO predicate act. Although it is a close call, we think the
allegations of fraud meet the specificity requirement of Fed. R.
Civ. P. 9(b). As we construe these allegations, they state that at
the time of purchasing the property described therein, Joseph led
Annette to believe that the title to the real estate would be in
both their names. We construe this to allege that there was a
deliberate misrepresentation by Joseph on which Annette relied and
that Joseph defrauded her by placing the property in the name of
the Klaidonis Foundation, which was owned and controlled by Joseph.

Paragraphs 29 through 32 bring another foundation into
the picture. They allege in effect:
Paragraph 29: Joseph established the Redonia Foundation
as a sham entity. Joseph used the mails and wires of the United
States to deposit, in five named banks and other banks, "hundreds
of thousands of dollars" which he used to make, improve and conceal
the ownership of investments here in the U.S.
Paragraph 30: Twenty-five specific examples of wire
transfers of money to a Luxembourg Bank, Credit Swisse Bank, and
Union Bank-Switzerland are stated. The money was hidden in the
"Redonia Foundation." This is part of Joseph's scheme and artifice
to defraud Annette "and as an integral part of defendant's RICO
activity."
Paragraph 31: There were numerous other wire transfers
"siphoning off" Annette's assets "from the foreign bank accounts to
which [Joseph] had removed them to Defendant DeMauro Co., and each
of the other defendants."
Paragraph 32: Nicholas DeMauro knew that the Redonia
Foundation was a sham used by Joseph to conceal assets in offshore
entities and then wire them into the United States.

None of these paragraphs state that a fraud was committed
against Annette with the specificity required by Fed. R. Civ. P.
9(b). Although Annette has alleged the use of the U.S. mails
and/or wires, by documenting some times and places of these
transfers, she fails to allege the content of any
misrepresentation.

The balance of the complaint fails to state a second
predicate act, which is required for a RICO violation. Some of the
remaining paragraphs repeat prior allegations and others are window
dressing.
Paragraphs 33 through 66 allege in effect:
Paragraph 33: Joseph, Nicholas DeMauro, Edward Martin,
DeMauro Co., Inc. and Tri-Area Development Co., Inc., have
conspired to place in excess of a million dollars into defendant
corporations. There are nine separate sub-paragraphs detailing how
this conspiracy was carried out. 
Paragraph 34: Joseph used the wires and mails to deposit
money in the Lowell Five Cents Savings Bank to acquire and maintain
properties which he concealed from Annette.
Paragraph 35: Identification of some of the concealed
properties and the names of those holding the properties are
stated. The properties have no mortgages and their estimated value
is "hundreds of thousands of dollars."
Paragraph 36: Most, if not all, of the money used to
acquire the properties described in Paragraph 35 is a joint asset.
Paragraph 37: Joseph and Nicholas DeMauro acquired
property in Tyngsborough, MA with Annette's money. This property
is in the names of DeMauro Co., Inc. and Tri-Area Development Co.,
Inc.
Paragraph 38: There were no mortgages on the Tyngsborough
properties, and DeMauro Co., Inc. and Tri-Area Development Co.,
Inc., the named owners, had no viable source of credit, but
construction costing hundreds of thousands of dollars is being
done. Joseph has "wire transferred" money to both corporations "in
furtherance of the scheme." There are seven sub-paragraphs
detailing a purported money laundering scheme involving $60,000.
Paragraph 39: Joseph makes multiple phone calls to
Annette telling her that he has hidden her assets and she will get
nothing. The amount of Annette's money so concealed is "well in
excess of ten million dollars."
Paragraph 40: Joseph has been using DeMauro Co., Inc. and
Tri-Area Development Co., Inc. to provide a means of support for
his two sons, Nicholas and Michael. The sons are assisting him in
conducting his racketeering activity and fraud.
Paragraph 41: The payments to Joseph's sons deprived
Annette of money and property due her.
Paragraph 42: DeMauro Co., Inc. has provided assets to
Joseph's brother-in-law Edward Martin and his sister Joan Martin by
listing on its financial statements a false account payable to
Edward Martin in the amount of $135,000.
Paragraph 43: More details are laid out about the
$135,000 referred to in paragraph 42.
Paragraph 44: Assets of more than $500,000 have been
fraudulently transferred to Edward and Joan Martin.
Paragraph 45: Joseph and some other defendants have
participated in money laundering.
Paragraph 46: Joseph has used other persons "innocent and
otherwise" to attend real estate auctions and bid on property for
him and he concealed such purchases from Annette.
Paragraph 47: Property in the name of Tri-Area
Development Co., Inc. as described by deed in Exhibit L is an
example of Joseph acquiring property from marital assets and
concealing it in the name of another.
Paragraph 48: Joseph and the other defendants conspired
to hide Annette's assets, thus depriving her of millions of
dollars.
Paragraph 49: Joseph falsely represented to the Town of
Rye, NH that the Klaidonis Foundation is the owner of 2595 Ocean
Blvd. in Rye, NH. Joseph invested hundreds of thousands of
dollars, obtained from abroad, in renovating the property.
Paragraph 50: Joseph has used the wire and mails to
conceal assets and siphon off assets belonging to Annette.
Paragraph 51: Joseph, working with Nicholas DeMauro,
submitted false and misleading loan applications to FDIC insured
lending institutions.
Paragraph 52: Specific threats, intimidations, harassment
and extortion of Annette by Joseph are described.
Paragraph 53: The allegations in paragraph 52 violate the
laws of New Hampshire and the United States.
Paragraph 54: Joseph has secretly tape-recorded
conversations with Annette and played portions of the tapes to
third parties.
Paragraph 55: Joseph has used a law firm in West Palm
Beach, Florida to pay bills and conceal from Annette the origin of
his funds. 
Paragraph 55(a): Annette and Joseph, through a trust
established by Joseph, own property in Manalapan, Florida. Five
sub-paragraphs detail how Joseph has extorted Annette and misused
the property causing her damages in excess of $50,000.
Paragraph 56: Joseph misused credit cards in Annette's
name to purchase goods.
Paragraph 57: Joseph has falsely registered at hotels
with other women posing as Annette.
Paragraph 58: Joseph purchased a yacht with another
person and then deliberately damaged it so that he could claim it
did not meet contract specifications. A judgment has been entered
against Joseph, threatening Annette in the amount of many hundreds
of thousands of dollars.
Paragraph 59: Joseph has, within the last two years,
furthered a conspiracy to defraud and extort Annette. There are
four sub-paragraphs of specifications. We have read the sub-
paragraphs carefully and they neither singly nor in the aggregate
allege facts sufficient to prove a present conspiracy to defraud
and extort Annette.
Paragraph 60: The defendants have repeatedly used wires,
mails, and other means of interstate commerce to violate RICO.
Paragraph 61: As the result of Joseph's illegal
activities, Annette has been unable to locate and control her
assets.
Paragraph 62: Nicholas DeMauro has admitted in a public
document that the stock of DeMauro Co., Inc. is owned by Joseph. 
Three sub-paragraphs from a pre-trial memorandum filed in
Massachusetts Probate Court follow.
Paragraph 63: Nicholas DeMauro is causing valuable
property to be deeded to him by DeMauro Co., Inc. in fraud of
Annette's rights.
Paragraph 64: Joseph, during his deposition, invoked the
5th Amendment privilege "to virtually every question."
There is no paragraph numbered 65.
Paragraph 66: Joseph has stolen private papers of Annette
and refuses to return them.
Paragraph 66(a) states that the complaint does not
allege: that Joseph is guilty of income tax evasion, has received
any illegally paid wages, or that any wages he has earned from his
own employment are from any criminal enterprise. The final sub-
paragraph (d) states that the purpose of this statement is because
Joseph has invoked the fifth amendment in his depositions without
any basis for doing so.

Although the allegations described in paragraphs 33
through 66 recite serious crimes and reprehensible conduct, none of
them, singly or consolidated, set forth a second predicate act
sufficient to meet the legal requirements for a RICO violation.
IV. Conclusion
Paragraphs 12 through 17 do not show an enterprise
engaged in a pattern of racketeering activity. Paragraphs 18
through 21 fail to plead fraud with particularity. Paragraphs 22
through 28 set forth sufficient facts to allege one predicate act. 
Paragraphs 29 through 32 do not state that a fraud was committed
against Annette with the specificity required by Rule 9(b). 
Paragraphs 33 through 66 fail to set forth a second predicate act. 
Therefore, we affirm the district court's ruling to dismiss Counts
One and Two of the complaint.
We point out that our affirmance of the dismissal does
not leave Annette without other remedies. As noted in our prior
opinion, she has obtained attachments in state court totaling 33
million dollars in property owned partly or solely by Joseph. See 
DeMauro, 115 F.3d at 97.
We find no merit in plaintiff's objections to the
district court's dismissal of the other counts in the complaint. 
See 28 U.S.C. 1367(c) (1990).
Judgment affirmed.