**David EFRON, Plaintiff,**

v.

**EMBASSY SUITES (PUERTO RICO), INC., et al., Defendants.**

**No. Civ. 97–2547(HL).**

United States District Court, D. Puerto Rico.

April 14, 1999.

Ruben T. Nigaglioni, McConnell Valdes, San Juan, PR, Guy B. Bailey, Jr., Bailey & Jones, Miami, FL, for plaintiff.

Arturo Diaz–Angueira, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for Embassy Suites, (Puerto Rico), Inc., Embassy Suites, (Isla Verde), Inc., Promus Hotel Corporation, defendants.

Luis Sanchez–Betances, Sanchez Betances & Sifre, San Juan, PR, for Mora Development Corporation, A Puerto Rico corporation, individually and as managing partner of ES Hotel Isla Verde, S.E., a Puerto Rico civil partnership, Cleofe Rubi–Gonzalez, Moraima Cintron–De–Rubi, defendants.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for First Big Island Steakhouse, Inc., A Puerto Rico corporation, Emma M. Cancio–Santos, defendants.

Juan R. Marchand–Quintero, San Juan, PR, for Es Hotel Isla Verde, S.E., A Puerto Rico civil partnership, defendant.

Jorge A. Pierluisi–Jr., Pierluisi Law Offices, PSC, Hato Rey, PR, for Corporacion De Desarrollo Hotelero, A Puerto Rico corporation, defendant.

Roberto Lefranc–Morales, Santurce, PR, for Fundacion Segarra Boerman E. Hijos, Inc., A Puerto Rico corporation, defendant.

*OPINION AND ORDER*

LAFFITTE, District Judge.

Before the Court are the motions of several defendants to dismiss the nine-count first amended complaint and the plaintiff's response thereto. Dkt. Nos. 43, 56, 58, 60 For the reasons discussed in this opinion, the motions are granted.

**BACKGROUND[1]**

This lawsuit involves a limited partnership in which plaintiff invested. The partnership, known as E.S. Hotel Isla Verde, S.E. [the "Partnership"], was organized for the purpose of developing and operating an Embassy Suites Hotel in Carolina, Puerto Rico. The partnership was formed under the laws of Puerto Rico between plaintiff and the following parties: Cleofe Rubi Gonzalez ["Rubi"] and his wife Moraima Cintron de Rubi ["Cintron"]; Mora Development Corporation ["MDC"]; Embassy Suites (Isla Verde), Inc. ["ESIV"]; Corporacion De Desarrollo Hotelero ["CDH"]; and Fundacion Segarra Boerman E Hijos, Inc. ["FSBH"]. All partners were "special" or limited partners under Puerto Rico law.[2] MDC, a corporation headed by Rubi, was designated managing partner and given the concomitant authority to conduct administrative duties on behalf of the Partnership. Plaintiff alleges that the Partnership is a legitimate business entity that is being used as an enterprise to conduct an unlawful racketeering scheme.

In general, plaintiff alleges that limited partners ESIV, MDC, Rubi, and Cintron have joined with other defendants in an effort to bilk the Partnership of funds. The other defendants are: Embassy Suites (Puerto Rico), Inc. ["ESPR"] a Delaware corporation hired by the Partnership to manage the hotel; another Delaware corporation identified only as Promus, the parent corporation of ESPR and

---

1. All facts are taken from plaintiff's amended complaint filed on December 17, 1997 and from plaintiff's RICO case statement, Dkt. No. 23.

2. 31 L.P.R.A. § 4372

ESIV; First Big Island Steakhouse, Inc. ["Outback"], a Rubi-controlled corporation leasing restaurant space from the Partnership; Emma M. Cancio Santos ["Cancio"], attorney-in-fact for the Partnership and agent for several of the defendants.

Specifically, the alleged scheme plays out as described below. Rubi, as president of managing partner MDC, conspired with Promus and ESIV to hire ESPR to manage the Partnership property. ESPR intentionally caused the hotel to underperform by incurring in construction overruns, overpricing rooms, engaging in sweetheart leases, and other acts of mismanagement. According to the complaint, ESPR acted purposefully in order to create cash shortfalls which would have to be covered by capital calls to the limited partners. A limited partner who failed to provide the required capital would then have its interest in the Partnership reduced proportionally.

In more detail, the conspirators allegedly caused construction cost overruns by: making payments to a Rubi-owned company in excess of the value of goods and services received, shifting subcontractor bills from other projects onto the Partnership, and delaying construction by adding plans for a specialty restaurant, Outback, late in the construction phase. After the hotel was built, the conspirators allegedly overpriced the rooms and failed to adequately market the hotel's services to create cash shortfalls. Additionally, the conspirators caused the Partnership to engage in a sweetheart lease deal with Outback to the benefit of Rubi and ESPR and to the detriment of the Partnership. The conspirators executed another lease to the hotel's gift shop that was below market value. Finally, MDC and Rubi allegedly sought to prevent plaintiff from reviewing the Partnership's records in an effort to cover up their scheme.

By all of these activities, and the predicate acts of mail and wire fraud attached to them, the amended complaint charges that the defendants violated The Racke-

teer influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1962(c), (d). Defendants have moved to dismiss the complaint and have raised several grounds for doing so, including: (1) the complaint's failure to states a claim for RICO violations due to lack of a pattern; (2) plaintiff's lack of standing; (3) the complaint's failure to meet the heightened pleading requirements imposed by Fed.R.Civ.P. 9(b); and (4) lack of supplemental jurisdiction over the local law claims.

## ANALYSIS

### I. Rule 9(b) Particularity

■ Rule 9(b) requires plaintiffs to plead the circumstances of alleged fraud with particularity. This heightened pleading requirement extends also to the pleading of RICO mail and wire fraud allegations as in the case at bar. *New England Data Services v. Becher*, 829 F.2d 286 (1st Cir.1987). The purpose of Rule 9(b)'s particularity requirement are threefold; (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims as pretext for discovery or "strike suits", and (3) to safeguard defendants from the reputation damage of frivolous charges. *Id.* at 289. In this case, plaintiff has filed a RICO Case Statement, Dkt. No. 23, pursuant to an order of the Court. In that case statement, and also in the complaint, plaintiff has briefly set forth the dates, contents, and circumstances surrounding each alleged incident of mail or wire fraud. These detailed summaries, rather than general accusatory language, adequately serves to place defendants on notice of which conduct is at issue and to assure the Court that the charges are not of wholly spurious character. As such, the Court finds that plaintiff has satisfied the particularity requirement of 9(b).

### II. Violation of § 1962

Plaintiff's RICO claim is brought under 18 U.S.C. § 1962(c) and (d). Plaintiffs allege that all of the defendants violated the

RICO act by participation in the purported scheme to siphon money away from the Partnership and squeeze out the interests of the limited partners who refused to make capital contributions. To plead a violation of § 1962(c), plaintiffs must allege the defendants' conduct of an enterprise through a pattern of racketeering activity. *Sedima S.P.R.L v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiffs have not sufficiently pleaded the predicate acts necessary to show a pattern of racketeering, and their RICO claims must be dismissed accordingly.

### A. Inadequacy of the Alleged Pattern of Racketeering

■ A RICO plaintiff needs to allege at least two predicate acts of racketeering within a 10–year period. 18 U.S.C. § 1961(5) The predicate acts must consist of offenses indictable under specifically listed criminal statutes, including, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. 18 U.S.C. §§ 1961(1)(A), 1961(1)(D). Additionally, the plaintiff must show that the predicate acts are related, and that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989).

### 1. Predicate Acts

■ The Court looks to plaintiff's RICO case statement, Dkt. No. 23 pp. 16–21, wherein plaintiff set forth his allegations regarding predicate activity. The RICO case statement contains allegations of mail fraud and wire fraud as the predicate acts, and the question is whether those allegations are sufficient to provide a basis for the RICO claims. The allegations can only be predicate acts if they are indictable under the respective criminal statutes. 18 U.S.C. § 1961(1)(B). Plaintiff has alleged several facsimile transmissions in an effort to show that wire fraud was committed. However, none of these facsimile transmissions are alleged to have traveled on inter-

state phone lines, a necessary component of the *actus reus* needed for indictment under the wire fraud statute. 18 U.S.C. § 1343. *Bernstein v. Misk,* 948 F.Supp. 228 (E.D.N.Y.1997); *Brooke v. Schlesinger,* 898 F.Supp. 1076 (S.D.N.Y.1995) (disallowing wire fraud allegations as RICO predicate acts because there was no interstate telephone use); *H.G. Gallimore, Inc. v. Abdula,* 652 F.Supp. 437 (N.D.Ill.1987) (telephone fraud is not racketeering activity under RICO unless interstate communication alleged sufficient for indictment under wire fraud statute); *Harris Trust and Sav. Bank v. Ellis,* 609 F.Supp. 1118 (N.D.Ill.), *aff'd,* 810 F.2d 700 (1987) (wire fraud allegations deficient where they did not allege use of interstate wires and all parties were Illinois residents). Because plaintiff has not alleged that any of the facsimile transmissions went outside of Puerto Rico, the allegations concern only intrastate telephone communications unreachable by the statute. As such, all of the wire fraud allegations must be discounted as RICO predicate acts as a matter of law.

The remaining ten allegations consist of letters sent over a period of less than two years. Plaintiff claims that these letters were in furtherance of the scheme to defraud him of money or his interest in the Partnership, and so they must have been to qualify as indictable under the mail fraud statute. 18 U.S.C. § 1341; *United States v. Allard,* 926 F.2d 1237 (1st Cir. 1991) (scheme is an essential element of a crime under § 1341). However, a few of plaintiffs allegations do not meet this requirement. For example, plaintiff alleges that Cancio, on behalf of First Big Island Steakhouse, Inc. sent a letter to Outback Steakhouse International that Cancio, Rubi, and Rubi's family would receive complimentary dining cards for the restaurant. Plaintiffs allege that this letter demonstrates the defendants' self-interest in operating the restaurant and the Partnership's managing partner. Pl.'s RICO Stmt, Dkt. No. 23, p. 17. Even if this

letter demonstrates plaintiff's contention, it still fails to advance defendants' scheme of depriving plaintiff and the Partnership of money. Even viewed in the light most favorable to plaintiff, it is not an indictable offense under § 1341 and cannot be part of the Court's analysis of predicate acts.

Similarly, plaintiff alleges that Cancio sent letters to the special partners and an outside accountant indicating that certain partnership records were being made available to plaintiff and the accountant for review and that other documents had already been provided. Plaintiff claims that the defendant did not make the stated documents available in any meaningful way and that the letter "was an attempt to divert attention from the defendant's misconduct by falsely stating that they were complying with [plaintiff's] requests." Pl.'s RICO Stmt., Dkt. No. 23, pp. 20–21. Again, even in the light most favorable to plaintiffs, these letters could not have advanced the alleged scheme by general allegations that the letters were an attempt to "divert attention."

### 2. Relatedness and Continuity

A plaintiff seeking to establish a RICO "pattern of racketeering" must show that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. 2893; *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir.1997); *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir.1995); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44 (1st Cir.1991). Continuity, for RICO purposes, is both "a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat or repetition." *Vicom Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 779 (7th Cir.1994) (quoting *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. 2893). *See also, Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445–48 (1st Cir.1990) (detailed examination of continui-

ty requirement in light of Supreme Court's ruling in *H.J., Inc.*).

The First Circuit has determined that common sense rather than any strict test rules a determination of continuity; however, it has stressed that in light of *H.J., Inc.* the number of acts and the length of the period over which they occurred are central to the analysis. *United States v. Boylan*, 898 F.2d 230, 250 (1st Cir.1990); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 846 (1st Cir.1990); *Fleet Credit Corp.*, 893 F.2d at 447. Accordingly, the Court shall primarily focus on those two issues.

Predicate acts extending over a few weeks or months do not satisfy the requirements of closed-ended continuity. *Libertad*, 53 F.3d at 445 (citing *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893 and *Fleet Credit Corp.*, 893 F.2d at 446. ) In the case at hand, the eight viable predicate acts alleged by plaintiff occurred over a period of 20 months between January 1996 and September of 1997. A closer look reveals, in reality, all but two letters were sent within a 90 day period from June 1997 to September 1997. The other two letters, one informing that there were construction cost overruns, and the other seeking capital contributions from the partners, were sent in January and October of 1996 respectively. Taking the common sense approach espoused by Congress, the Supreme Court and this Circuit,[3] and mindful of the lenient standard of review for motions to dismiss, these allegations do not rise to the level of a closed period of repeated conduct sufficient to establish a pattern of racketeering activity. The acts are simply too few and the time period too short, indicating that this case is a commonplace dispute among partners rather than the type of long-term criminal conduct sought to be deterred by the extraordinary remedy of RICO's treble damages. *See, H.J., Inc.* 109 S.Ct. at 2899, 109 S.Ct. 2893. Furthermore, many of these letter

---

**3.** *See, Fleet Credit Corp.*, 893 F.2d at 447

(quoting *H.J., Inc.*, 109 S.Ct. at 2899).

exchanges centered around discrete disputes such as the cost overruns, refinancing, and disclosure of records. Thus, the few acts of fraud alleged refer to even fewer real events. Once again this tends to preclude a finding of long-term criminal conduct. The same result would likely have obtained even if plaintiff's excluded allegations of predicate acts had been part of the analysis.

Having determined that plaintiffs have not sufficiently established closed-ended continuity, the court turns its attention to whether plaintiff has shown a threat of ongoing criminal activity. Predicate acts threaten ongoing criminal activity when they demonstrate past conduct that "by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 109 S.Ct. at 2902, 109 S.Ct. 2893. *See, Ahmed,* 118 F.3d at 889; *Fleet Credit Corp.*, 893 F.2d at 447. This may be shown by demonstrating that the predicate acts, mail and wire fraud, were a regular way of conducting the Partnership's ongoing business. *Fleet Credit Corp.*, 893 F.2d at 448.

In this case, the allegations of predicate acts all germinate from disputes arising during the startup phase of construction and leasing of the hotel. The issues occurring at startup, even if a scheme, may have after-effects that project into the future as does virtually any business decision, but these circumstances do not indicate that mail and wire fraud are the means by which the Partnership conducts its general affairs. As the Court in *Fleet* pointed out, "a threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that ... acts of common law fraud are a regular way of conducting ... ongoing businesses. Rather [plaintiff] must demonstrate that the *predicate acts*—here the acts of mail fraud—

were a regular way of conducting the activities of mail and wire fraud would continue into the future even if the scheme itself were to continue." *Id.*[4] Because plaintiff has failed to allege sufficiently a pattern of racketeering activity, his claim for RICO violations cannot be sustained, even drawing all inferences in his favor.

## III. Standing

Even if the complaint had properly pleaded a pattern of racketeering activity, an analysis of plaintiff's admixture of individual and derivative standing would not allow him to proceed.

### A. Individual Standing

█ The standing requirements for a civil RICO action are set forth in 18 U.S.C.A. § 1964(c) (West Supp.1999). Plaintiff must show: (1) a violation of 18 U.S.C.A. § 1962; (2) injury to his business or property; and (3) a causal relationship between the violation and injury. *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 846 (1st Cir.1990) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d. 346 (1985); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29 (1st Cir.1987).

Generally, a plaintiff shareholder does not have standing to assert a RICO claim based on derivative injuries. *See, Bass v. Campagnone,* 838 F.2d 10, 12 (1st Cir. 1988) (four members of trade union local could not sue the local's president for operating local as RICO enterprise when injuries alleged were a diversion of the local's funds, an injury to the local itself); *Roeder,* 814 F.2d at 29–30 (suit by shareholder for damages incurred to stock price by firm's payment of a bribe dismissed for want of standing). Courts have applied

---

4. Plaintiff's general contention that "the [Partnership] was and will continue to be a vehicle for the defendants to engage in racketeering activities," Dkt. No. 23, p. 27, without more, does not sufficiently indicate how or why the past predicate acts will continue into the future. The mere nondisclosure of Part-

nership records, which plaintiff insists is continuing, may well be a contractual violation, but it is not a criminal act of fraud; furthermore, the allegations are that this nondisclosure is for purposes of covering up past behavior, and not in furtherance of future frauds. Dkt. 23, pp. 20–21.

the rationale of derivative suits to limited partnerships along with corporations. *Attick v. Valeria Assocs., L.P.,* 835 F.Supp. 103, 110 (S.D.N.Y.1992) (denying standing to limited partners for pleading a derivative action under RICO); *Abeloff v. Barth,* 119 F.R.D. 332, 334 (D.Mass.1988) (Applying Fed.Rule Civ.P. 23.1, derivative pleading rule, to a limited partner). Indeed, special partnerships are persons under Puerto Rico law with the capacity to sue and be sued,[5] and the analogy to corporate derivative actions is strong.

In *Bass v. Campagnone,* 838 F.2d 10 (1st Cir.1988), the First Circuit relied on *Roeder,* its own precedent, to uphold dismissal of the RICO claims of four union members against their local president when the plaintiffs alleged injury that was not unique to them. In short, the alleged injury, misappropriation of the local's funds, was an injury sustained by all union members equally and thus belonged to the union itself. This injury was therefore redressable by the union and was not actionable by its members as individuals. *Id.* at 12–13. The Court found that under Fed.R.Civ.P. 17(a), the plaintiffs were not the real parties in interest. *Id.* at 13.

In *Roeder,* 814 F.2d 22 (1st Cir.1987), the Court determined that a shareholder could only recover as an individual when the injury sustained is "peculiar to him alone and does not fall alike upon other stockholders." *Id.* at 30 (quoting 12B W. Fletcher, *Cyclopedia of the Law of Corporations,* § 5913, at 434 (rev.perm. ed.1984)). The Court finally concluded that a RICO action to recover for injury to the corporation is an asset of the corpora-

tion that shareholders may not bring in their own names. *Id.* quoting *Rand v. Anaconda–Ericsson, Inc.* 794 F.2d 843, 849 (2nd Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

In this case, plaintiff has not sustained an injury different from that allegedly caused the Partnership as a whole. The claimed injury is the same as to all other special partners. Plaintiff claims that he suffered unique injury because his interest in the Partnership was diminished, and attempts to draw a distinction between his case and jurisprudence to the effect that misuse of funds is an action belonging to the Partnership and not the partners.[6] However, as alleged in the complaint, all special partners were called upon to make capital contributions or face a proportionate reduction of their equity. This in no way subjects plaintiff to treatment different from that of the other special partners. All were faced with the same choice of coming through with the money or an equity reduction. The fact that Plaintiff alone chose equity reduction rather than capital contribution does not make his relationship to the conspirators, the other partners, or the Partnership unique. He was given the same option as the other limited partners and merely exercised his preference. Plaintiffs claims are essentially accusations of the looting of Partnership funds and self-dealing,[7] bringing his claim squarely within the precedent of *Bass* and *Roeder.* As such, plaintiff may not sustain this action in his individual capacity because he is not the real party in interest under Rule 17(a).[8] Were the Court to

---

5. 10 L.P.R.A. § 1347 (1997); 31 L.P.R.A. § 104 (1993)

6. *See e.g., Whalen v. Carter,* 954 F.2d 1087 (5th Cir.1992); *Sears v. Likens,* 912 F.2d 889 (7th Cir.1990); *Flynn v. Merrick,* 881 F.2d 446 (1989); *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635 (9th Cir.1988); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843 (2nd Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Attick v. Valeria Assoc., L.P.,* 835 F.Supp. 103 (1992).

7. "Even before the time the hotel became operational, the RICO Defendants' goal was to dilute the interests of the Special Partners and to siphon away Partnership assets." Amended Complaint, Dkt. No. 36, ¶ 19.

8. Rule 17(a) provides that a reasonable time after objection must be given before a claim may be dismissed to allow for joinder or substitution of the real party in interest. In this case, a sufficient period of time has elapsed since defendants' objection on

allow plaintiff to recover individually, it may well prejudice the interests of the other "innocent" partners.

## B. Derivative Standing

 Having determined that this RICO action is an asset of the Partnership, and therefore, if sustainable, is so only derivatively, the Court must now determine whether plaintiff has properly pleaded a derivative action under Fed.R.Civ.P. 23.1. Plaintiff has clearly not complied with the strictures of Rule 23.1 in that he has never verified the complaint,[9] nor included the specific allegations of his efforts in making a demand on the Partnership or that a demand would have been futile. The First Circuit has held the pleading of a demand or its futility to be a strict requirement warranting dismissal when plaintiffs do not comply.[10] *Gonzalez Turul v. Rogatol Dist., Inc.,* 951 F.2d 1, 2 (1st Cir.1991); *Heit v. Baird,* 567 F.2d 1157 (1st Cir.1977). These strictures aside, plaintiff's derivative claim faces another significant, and ultimately fatal, defect; plaintiff does not fairly and adequately represent the interests of the other limited partners as required by Rule 23.1

It is clear that a derivative plaintiff need not represent the interests of all the other shareholders or partners, only those with whom he is "similarly situated." Fed. R.Civ.P. 23.1; *Nolen v. Shaw–Walker Co.,* 449 F.2d 506 (6th Cir.1971); *Schupack v. Covelli,* 512 F.Supp. 1310 (W.D.Pa.1981). In this case, only two of the partners are not named as RICO conspirators allegedly benefitting from the illegal harm caused to the Partnership. The two partners thus similarly situated are FSBH and CDH. Indeed, plaintiff admits as much in his Complaint when he refers to himself, CDH, and FSBH as "victims," and draws a sharp distinction between this group of partners and the group he refers to as "RICO Defendants." Amended Complaint, Dkt. No. 36, ¶ 15–16.

 The question then becomes whether plaintiff fairly and adequately represents the interests of FSBH and CDH for purposes of maintaining a derivative suit. There are several factors courts have used to determine adequacy of representation: (1) indications that plaintiff is not the true party in interest; (2) unfamiliarity with the litigation; (3) degree of control exercised by attorneys over the litigation; (4) the degree of support received from other shareholders; (5) lack of personal commitment to the action; (6) the remedy sought; (7) relative magnitude of plaintiff's personal interest as compared with interest in derivative action itself; and (8) plaintiff's vindictiveness toward defendants. *See, Smith v. Ayres,* 977 F.2d 946 (5th Cir.1992); *Larson v. Dumke,* 900 F.2d 1363 (9th Cir.1990); *Davis v. Comed, Inc.,* 619 F.2d 588 (6th Cir.), *reh'g denied,* 623 F.2d 28 (1980).

As with the trade union members in *Bass,* there are pleadings indicating that CDH and FSBH do not support this litigation. As defendants' point out in their motion to dismiss, Dkt. No. 43, pp. 29–32, both CDH and FSBH were named by plaintiff as necessary parties in interest; neither has opted to join his cause. Instead, both CDH and FSBH have filed pleadings in which they demonstrate their opposition to this litigation. In its motion requesting a stay, Dkt. 40, FSBH asked for a stay of this case pending resolution of

---

grounds that plaintiff could not sustain an individual action. .

9. The closest plaintiff has come to verifying the complaint is the indication in his opposition motion that he would be willing to do so. Pl's. Opp'n Mot., Dkt. No. 48, p. 8. Unfortunately for plaintiff, Rule 23.1 is not satisfied by the intentions to verify but rather the act of verification itself.

10. The Court notes that plaintiff has alleged self-dealing on the part of the RICO defendant partners with particularity even if he did not formally plead that a demand on the Partnership would have been futile. The Court further notes that plaintiff does not allege that he sought to have the other disinterested partners review or approve of his remedy.

the standing issue, a legal stance directly opposed to that of plaintiff who has filed numerous motions opposing stay and requesting a lift of the stay imposed by the Court. Furthermore, in that motion, FSBH state that it was an entity "estrange[d] to the facts contained in the Amended Complaint," and "should not be required to engage [in] a costly & time consuming extensive investigation." Dkt No. 40, ¶ 7. These statements filed by counsel for FSBH indicate that FSBH is opposed to plaintiff's suit. As to CDH, it has never filed a motion asking to join as a plaintiff during the pendency of this case. Rather, it, too, requested a stay of an answer under Rule 12(b), in which it stated that it would have to await discovery before taking a position and would like to wait until after resolution of the jurisdictional issues, Dkt. No. 45. Therefore, at the very least, there is a considerable lack of support for this litigation from the two partners similarly situated. As in *Bass*, the Court finds this lack of support to be highly persuasive.

In addition, the interests of plaintiff and partner CDH are divergent. As alleged in the complaint, CDH is a publicly funded corporation under the auspices of the Puerto Rico Board of Tourism. Its purpose is to promote the development of hotels in Puerto Rico as a means of benefitting the island's tourist economy. The interests of a governmental tourist organization in maintaining the operation of this hotel necessarily diverge from those of a private investor whose only interest in filing suit is a return on investment The incentive of CDH is not return on investment, but the stable operation of the hotel as a boost to Puerto Rico's economy. The enormous money damages which plaintiff seeks, along with the other destabilizing remedies of reformation of the management agreement, leases and the Partner-

ship itself threaten CDH's interest in maintaining the hotel while directly advancing plaintiff's interest in return on investment. It simply cannot be said that plaintiff would be willing or able to account for the necessarily broader interests of CDH nor the government of Puerto Rico in bringing his cause of action. It is therefore likely that CDH's interests will be disregarded in plaintiff's suit. *See, G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 27 (1st Cir. 1975) (when a conflict of interest is "immediate and obvious," extrinsic facts of "sufficient strength" warrant dismissal under Rule 23.1). Because plaintiff has not complied with the provisions of Rule 23.1, and because his interests diverge from, and he lacks the support of, the similarly situated partners, plaintiff is unable to bring his RICO claims as a derivative action.

### IV. Supplemental Claims

■■■ The only two bases for jurisdiction alleged in the complaint are federal question, 28 U.S.C. § 1331 (federal RICO claims), and supplemental jurisdiction under 28 U.S.C. § 1367 (local law claims). Because the Court is dismissing plaintiff's federal RICO claims for want of standing and for lack of an adequate substantive basis in law, the local law claims now utterly predominate in this action.[11] Accordingly, the Court declines to exercise its supplemental jurisdiction over them in accordance with the rule of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See, Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir.1991).

WHEREFORE, The Court grants Defendants' motions to dismiss due to plaintiff's lack of standing and failure to adequately plead a federal RICO violation. Counts One and Two are therefore, hereby

---

**11.** The Court notes that at its heart, this matter is a bitter local law dispute between partners and that the local causes of action and remedies comprise nine out of eleven counts. Although the federal RICO claims arise from roughly the same nucleus of facts as those under local law, nonetheless, the Court could have found that the local law claims predominated even if the federal RICO claims had persisted.

dismissed with prejudice. The local law claims, Counts 3 through 11, are hereby dismissed without prejudice. Judgment shall issue accordingly

IT IS SO ORDERED.