Norberto **TRINIDAD, Gladymar Development Corp.,** Plaintiffs,

v.

**IDI HOLDINGS PR, INC.; IDI Holding Ceiba 2, Inc.; IDI Group Companies; IDI Financial, LC; Giuseppe Cecchi; Federico L. Togni; Thomas Rackowski; Unknown Entities ABC, Defendants.**

**Civil No. 05–1207 (PG/CVR).**

United States District Court, D. Puerto Rico.

Nov. 15, 2005.

Lydia M. Ramos–Cruz, Esq., Osvaldo Carlo–Linares, Esq., for Plaintiff(s).

Jose A. Fuentes–Agostini, Esq., for Defendant(s).

## OPINION AND ORDER

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### PROCEDURAL BACKGROUND

On February 22, 2005, plaintiffs Norberto Trinidad and Gladymar Development Corp. (herein referred to as "plaintiffs"), filed suit against defendants IDI Holdings PR, Inc., IDI Holdings Ceiba 2, Inc., IDI Group Companies, IDI Financial LC., Giuseppe Cecchi, Federico I. Togne, Thomas Rackowski, and unknown entities ABC (herein referred to as "defendants"), alleging jurisdiction of the Court under the Racketeering Influenced Corrupt Organization Act ("RICO"), 28 U.S.C. § 1331; 18 U.S.C. §§ 1961, 1962(c) and 1962(d). (Docket No. 1).

On March 25, 2005, defendants filed a Motion to Dismiss with a Memorandum in Support thereof (Docket No. 3), in addition to a reply thereafter. (Docket No. 10). Defendants allege in their Motion to Dismiss that plaintiffs have failed to properly present a federal RICO violation and instead the suit filed arises from a typical commercial contract dispute between corporations. The agreement between the parties dealt with the creation of a partnership between Gladymar and IDI Holdings PR to develop a property into a shopping center in the area of Ceiba, Puerto Rico, which now gives ground to a contractual dispute.[1] Defendants contend the Complaint makes no allegation of fraud, no fraud in the inducement, no racketeering and no predicate acts to support racketeering allegations, pattern or continuity, thus failing to submit a federal RICO claim. Absent a federal claim, defendants contend plaintiffs' cause of action under local law

and pendent jurisdiction should also be dismissed.

On May 6, 2005, plaintiffs filed an Opposition to defendants' Motion to Dismiss, as well as an Opposition to Motion for Protective Order and Stay of Discovery. Plaintiffs' Opposition to the Motion to Dismiss submits the pleadings in the Complaint have properly alleged fraud and racketeering activity since a literal reading leaves no doubt that, upon misrepresentations and promises with the aid of mail and wire fraud, defendants gained partial control of the property at issue, transferred same to their sister companies until they finally took control of it and kept the earnings and monies produced by same as investments. Plaintiffs aver the allegations show a fraudulent scheme and multiple acts of racketeering activities. Plaintiffs additionally state that, since defendants have been at all times in control of the information, including the financing, development and decision making power over the property, upon further discovery, they should be allowed to amend the Complaint to establish specific details of acts, dates, places and persons involved. (Docket Nos. 9 and 16).

Defendants filed a first request for protective order and stay of discovery and a supplemental motion for protective order in light of the state court action and the pending dispositive motion, which were granted by this Court. (Docket Nos. 15, 21 and 22).

The parties have consented to proceed before a United States Magistrate Judge and this case has been referred to the undersigned for all further proceedings. Thus, above stated motions are now before this United States Magistrate Judge (Docket Nos. 17 and 18).

---

1. This agreement is also subject to a state law suit for breach of contract and defendants perceive that, in bringing this federal RICO claim, plaintiffs present a litigation strategy to force them into defending their position in multiple forums.

## MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in plaintiffs' favor. *Soto–Negrón v. Taber Partners I*, 339 F.3d 35, 36 (1st Cir.2003); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in plaintiffs' favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.*; *see Doyle*, 103 F.3d at 190.

In *Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999) the Court held that a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. *Id.* at 77. With this standard in mind, all of the facts alleged in the complaint are accepted as true. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

## GENERAL LEGAL STANDARD FOR A RICO CLAIM UNDER § 1962.

RICO provides for a private right of action for "[a]ny person injured in his business or property by reason of a violation of § 1962 ..." 18 U.S.C. § 1964(c). Plaintiffs in this case allege violations of 18 U.S.C. § 1962(c) and (d).[2] "Racketeering activity," as defined in § 1961(1)(B), includes two "predicate acts" of mail or wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1343, respectively. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987).

■ To state a RICO claim, plaintiffs must allege four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir.2003) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). "Racketeering activity" means any act that violates one of the federal laws specified in the RICO statute, see 18 U.S.C. § 1961(1), including the mail and wire fraud statutes, 18 U.S.C. § § 1341 and 1343. At least two (2) acts of racketeering activity must occur within ten (10) years of each other to constitute a "pattern." *Id.* § 1961(5). The Supreme Court has construed the pattern element as additionally requiring a showing that "the racketeering predicates are

---

**2.** 18 U.S.C. § 1962(c) and (d) state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.

related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). This is the so-called "continuity plus relationship" standard. *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 15 (1st Cir.2000).

Acts are "related" if they have " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* (quoting *H.J.*, 492 U.S. at 240, 109 S.Ct. 2893 (quoting 18 U.S.C. § 3575(e))). To establish continuity, "the plaintiff must show that the related predicates 'amounted to, or posed a threat of, continued criminal activity.' " *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir.1991) (quoting *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445–46 (1st Cir. 1990)).

The Supreme Court has described continuity as "both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893; *Efron*, 223 F.3d at 16.

## ANALYSIS

### A. Introduction.

We must determine whether the Complaint in this case described a "pattern" of racketeering activity in light of the general principles governing RICO claims above stated.

The Complaint submits that on September 4, 1998 IDI Holdings PR signed an intent letter to form a partnership with plaintiff Gladymar to buy, develop and built Plaza Ceiba shopping center. The intent letter was ratified by the parties upon signing of an agreement and specifically agreed on December 2, 1998 that the land parcel for the shopping center would be transferred to the name of the partnership to be formed between the parties and IDI Holding PR would take all administrative decisions. IDI Holding PR bought the land parcel from its owners, upon which plaintiff had a purchase option, which fact was omitted in the deed. IDI Holding PR mortgaged the property in the amount of $1,520,000 and thereafter IDI Financial LC refinanced same in the amount of $3,020,000. IDI Holding PR never formed the agreed upon partnership with Gladymar. ID Holding PR decided not to build the shopping center and sold part of the land to IDI Holding Ceiba 2, owner of the project located next to the parcel and built a housing project in the remaining of the land once destined for a shopping center. Thus, the property originally acquired by IDI Holdings PR, to be transferred to the name of a partnership with Gladymar, ended up on the exclusive hands of IDI's subsidiaries, for a total profit of IDI Group companies. This was done through a carefully planned scheme between all IDI defendants, its directors, officers and principals to defraud plaintiffs of their assets. IDI Holdings has caused plaintiffs the loss in over $4,000,000 per year, plus the value of the estimated property estimated in 1998 at $4,500,000. Plaintiffs claim this scheme was carried out through the use of mail fraud, wire fraud racketeering, laundering of money and/or money transactions that resulted in defendants acquiring full control of the property and transferring same between sister companies until being able to take full control and keep the earnings and money produced by the investment.

### B. Predicate Acts.

We evaluate the Complaint through the particularity prism of Fed.R.Civ.P.

9(b), *see Becher,* 829 F.2d at 290, considering "only those predicate acts specifically alleged" in the complaint, *Efron,* 223 F.3d at 16. Also, we do not credit generic allegations of common law fraud that do not implicate the mails or wires, as these acts do not constitute racketeering activity under RICO. *See Fleet Credit Corp.,* 893 F.2d at 445; *see also Efron,* 223 F.3d at 20 (noting that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it"); *Giuliano v. Fulton,* 399 F.3d 381, 388 (1st Cir.2005) (same).

■ A review of the Complaint shows that plaintiffs have not sufficiently pled the predicate acts necessary to show a pattern of racketeering, and their RICO claims must be dismissed accordingly. We explain.

In the Complaint's section entitled "Facts," there is no allegation that any of the fraudulent acts or groups of acts purportedly committed by defendants involved the use of the mail or wires. However, the Complaint's Section entitled "First Cause of Action (RICO Act)" contains the following facts of alleged predicate activity [3] including mail fraud and wire fraud:

1. Paragraph 33: "Since the beginning of the proposal, IDI defendants knew they would not build the proposed shopping center and that the partnership with Gladymar would not be formed. They also knew the property in controversy would never be transferred to such partnership. However, through fraudulent schemes and representations, using the channels provided by the inter-

state commerce and the facilities provided by wire communications and the U.S. Postal Service, they represented that the shopping center would be built and that the partnership would be formed, so that Plaintiffs agreed to the sale of the land to the name of IDI defendants. Once this was done, IDI defendants would be able to do al transactions to manage and keep the property for themselves, without any payment to Plaintiffs."

2. Paragraph 44: "To the best of Plaintiffs' knowledge and belief, at all times relevant to this claim, Defendants have engaged directly in racketeering activity, subjecting them to direct RICO liability under 18 U.S.C. § 1962(c)."

3. Paragraph 45: "To the best of Plaintiffs' knowledge and belief, Defendants acted with the specific intent to maintain an interest in or control of the enterprise, through a patter of racketeering activity involving the predicate acts of mail fraud, wire fraud, racketeering, laundering money, monetary transactions in property derived from unlawful activity, illegal appropriation and conspiracy to defraud."

4. Paragraph 46: "To the best of Plaintiffs' knowledge and belief, Defendants' pattern of acts described in the preceding paragraphs constitute 'racketeering activity' as the term is described in 18 U.S.C. § 1961(5)."

5. Paragraph 47: "To the best of Plaintiffs' knowledge and belief, Defendants received income in the scope of their employment from the pat-

---

[3]. The predicate acts must consist of offenses indictable under specifically listed criminal statutes, including, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. 18 U.S.C. § 1961(1)(A), 1961(1)(D).

tern of racketeering activity in the form of mail fraud, wire fraud, racketeering, laundering money, monetary transactions in property derived from unlawful activity, illegal appropriation and conspiracy to defraud."

These allegations are general allegations of mail and wire fraud but no reference is made whatsoever to a single predicate act. No specific allegation of wrongdoing is made as to the three (3) alleged individual participants nor any of the legal entities included as part of the defendants is alleged to have committed a predicate act to support a claim under RICO. No reference or description is made in these allegations as to the time, place and content of the alleged acts of mail and wire fraud. These vague allegations do not satisfy Fed. R.Civ.P. 9(b). *See North Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir.2001) (RICO plaintiff must state "the time, place and content of the alleged mail and wire communications perpetrating" the fraud); *Giuliano,* 399 F.3d at 388–89 (same); *Fleet Credit Corp.,* 893 F.2d at 444–45 (quoting *Becher,* 829 F.2d at 292 (RICO complaint does not satisfy Rule 9(b)'s particularity requirement where "plaintiffs have merely stated conclusory allegations of mail and wire fraud ... with no description of any time, place or content of the communication.")).

■ Even if we assume the alleged representations contained in paragraph 33 are true, that a shopping center would be built or that an entity would be formed, however, a proposed or anticipated fraudulent act cannot be counted as a predicate act in furtherance of a closed-ended racketeering scheme. *Giuliano,* 399 F.3d at 389; see also *Hall v. Burger King Corp.,* 912 F.Supp. 1509, 1544 (S.D.Fla.1995) ("[I]t is settled law that 'a promise of future action or a prediction of future events cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made.' ") (quoting *Kamenesh v. City of Miami,* 772 F.Supp. 583, 594 (S.D.Fla. 1991)).

■ The burden of proving a "pattern" is on plaintiffs, and we conclude that plaintiffs have not adduced evidence from which a trier of fact properly could find a pattern of predicate acts.

## C. Relatedness and Continuity.[4]

■ The attempt to establish an ongoing nature of the racketeering activity also falls short. Even assuming the misrepresentations and alleged "racketeering activity" contained in the paragraphs above mentioned, could be actionable under RICO, there is no allegation as to the period of time that the alleged misrepresentations stated took place. The only date mentioned in the Complaint is December 2, 1998 when IDI Holdings P.R. and Gladymar signed the agreement in question.[5] Complaint, ¶ 19.

4. The First Circuit has determined that common sense rather than any strict test rules a determination of continuity; however, it has stressed that in light of *H.J. Inc.* the number of acts and the length of the period over which they occurred are central to the analysis. *United States v. Boylan,* 898 F.2d 230, 250 (1st Cir.1990); *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 846 (1st Cir.1990); *Fleet Credit Corp.,* 893 F.2d at 447.

5. Nonetheless, plaintiffs aver in the Opposition to the Motion to Dismiss that the first act occurred in September 1998, as alleged in the Complaint, and the last known act occurred when defendant IDI Financial LC executed the lien it had on the property on an unspecified date in the year 2004. (Docket No. 9, pp. 3–6). No last known act by defendants is alleged in the Complaint.

Thus, we are left with a Complaint which includes general allegations of common law fraud which are not specific in any sense as to any predicate in particular. At the most, the allegations of the Complaint show a single, narrow scheme targeting a few victims. *See Efron*, 223 F.3d at 19 ("[C]ombination of single scheme, single injury, and few victims ... makes it virtually impossible for plaintiffs to state a RICO claim."). At most, plaintiffs' Complaint establishes a situation similar to *Efron*, where the Court of Appeals for the First Circuit held that the plaintiff's allegation that his business partners engaged in a series of 17 predicate acts over a 21-month period failed to state a pattern of racketeering activity. The Court of Appeals for the First Circuit concluded that while the 21-month period fell into the middle ground, the claim failed because all of the alleged acts of deception "were aimed at the single goal of transforming the ownership of the [business]" and harmed only three (3) named victims. *Efron*, 223 F.3d at 18. This case presents a similar situation. The Complaint alleges a scheme for an undetermined amount of time to fraudulently procure ownership of a single piece of property from one individual victim and his company. Their only injury was the loss of the property and the shopping center which was going to be built. There is no allegation that anything broader or more far reaching was attempted. Thus, this case falls squarely within the First Circuit's precedent rejecting closed-ended continuity. *See Efron*, 223 F.3d at 21 ("Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular [business venture] from a limited number of [victims]. This cannot be a RICO violation."). Thus, there is no "close ended continuity" because the alleged racketeering activity concerned a single scheme with a closed group of targeted people. *Systems Management, Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir.2002) (RICO is not aimed at a single narrow criminal episode, even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings). A single "scheme" may be reached by RICO, but only if it is reasonably broad and far reaching).

Having determined that plaintiffs have not sufficiently established closed ended continuity, we turn our attention to whether plaintiffs have shown a threat of ongoing criminal activity. Predicate acts threaten ongoing criminal activity when they demonstrate past conduct that "by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 109 S.Ct. at 2902. This may be shown by demonstrating that the predicate acts, mail and wire fraud, were a regular way of conducting the Partnership's ongoing business. *Fleet Credit Corp.*, 893 F.2d at 448. We find, there is no open-ended continuity either. The Complaint does not allege a specific threat of repetition extending indefinitely into the future, nor did it allege that the racketeering acts were a part of defendants' regular way of business. To the contrary, it acknowledged that all of the racketeering activity was focused on a singular purpose, "[s]uch enterprise consisted of a well-developed scam/fraud plan to deprive Plaintiffs from their projects, investments and economic interests" Complaint, ¶ 35; and "to obtain land options and permits from Plaintiffs and wrongfully deprive them of their investments." Complaint, ¶ 36. Thus, once achieved, the illegal scheme would end. The Complaint does not suggest that defendants would "seek to repeat their fraud in other ... similar business settings," or that they would "employ mail or wire fraud indefinitely" in their future operations. *Efron*, 223 F.3d at 19. Therefore, there is no

"open ended" continuity because the only scheme of the Complaint presents no danger of continuing racketeering activity "indefinitely into the future." *Id.*

As the Court in *Fleet Credit Corp.,* 893 F.2d at 448 pointed out, "a threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that . . . acts of common law fraud are a regular way of conducting . . . ongoing businesses. Rather [plaintiff] must demonstrate that the predicate acts—here the acts of mail fraud-were a regular way of conducting the activities of mail and wire fraud would continue into the future even if the scheme itself were to continue." *Id.* Because plaintiffs have failed to allege sufficiently a pattern of racketeering activity, their claim for RICO violations cannot be sustained, even drawing all inferences in their favor.

Thus, we do not find either "open ended" or "closed ended" continuity. The acts in this case do not amount to "a pattern of racketeering activity" but "to a commonplace dispute among partners rather than the long-term criminal conduct sought to be deterred by the extraordinary remedy of RICO's trebel damages." *Efron v. Embassy Suites (Puerto Rico), Inc.,* 47 F.Supp.2d 200, 206 (D.P.R.1999); *see H.J. Inc,* 109 S.Ct. at 2899.

 Moreover, breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO. *Perlman v. Zell,* 185 F.3d 850, 853 (7th Cir.1999); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 63 F.3d 516, 522–23 (7th Cir.1995); *J.D. Marshall International, Inc. v. Redstart, Inc.,* 935 F.2d 815, 821 (7th Cir.1991).

In view of the foregoing, plaintiffs have failed to establish a RICO cause of action.

Accordingly, the Complaint should be DISMISSED.

## D. Control of Information.

 Plaintiffs contend in their Opposition to the Motion to Dismiss that under *Becher,* 829 F.2d at 286, they are entitled to an opportunity to particularize the alleged predicate acts before the Complaint is dismissed because defendants are in total control of the information. Plaintiffs claim that at this stage and without discovery they are not able to establish specific dates, places and persons. Plaintiffs contend they need to conduct discovery "to acquire knowledge of the specific facts of the racketeering activity and to determine whether this activity has, in fact, concluded or whether indeed it is Defendants' standard way of conducting its business." (Docket No. 9, p. 5).

We recognize that the Court of Appeals has ruled that "in a RICO mail and wire fraud case, in regards to the details of just when and where the mail or wires were used, we hold that dismissal should not be automatic once the lower court determines that Rule 9(b) was not satisfied." *Becher,* 829 F.2d at 290. As ruled in *Becher,* in an appropriate case, where, for example the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint. The First Circuit advocates this procedure because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts. *Id.*

However, the relaxation of the pleading requirements is not applicable to this case. First, the control of the information was in the hands of defendants by agreement of the parties and not through deceit or fraud. This is recognized in paragraph 19 of the Complaint which reads in pertinent part as follows: "[t]he parties agreed that IDI Holdings P.R. would administrate the partnership, including financial decisions, construction, sales and development of the shopping center." Moreover, plaintiffs have failed to raise in their Opposition to Dismiss any evidence to show that the defendants have purposely retained information through illegal means.

Second, there is no need for discovery in this case in order for plaintiffs to be able to properly plead their allegations in the Complaint. It is undisputed that plaintiffs filed a related claim at the state courts for breach of contract which has been ongoing for three (3) years in which extensive discovery has ensued. Thus, it is hard to believe that plaintiffs have no information whatsoever to at least specifically plea one predicate act. "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." *In re Lupron Marketing and Sales Practices Litigation*, 295 F.Supp.2d 148, 169 (D.Mass.2003) (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir.1991)).

Third, contrary to *Becher*, 829 F.2d at 290, in this case there are no specific allegations by plaintiffs that would make it likely that defendants used interstate mail or telecommunications facilities and the specific information as to the use is likely on the exclusive control of defendants. As explained above, the Complaint in this case lacks specificity in every respect, including lack of specific fraud allegations.

Fourth, "it is not simply details that [plaintiffs] lack, but the substance of a RICO claim. The district court was not obliged to give [plaintiffs] a second chance to construct a pattern of racketeering activity out of two separate real estate frauds." *North Bridge v. Boldt*, 274 F.3d 38 (1st Cir.2001); *see Ahmed v. Rosenblatt*, 118 F.3d 886, 889–90 (1st Cir.1997) (application of *Becher* "second determination" approach "is neither automatic, nor of right, for every plaintiff.").

In view of the foregoing, this is not a case where the relaxed approach of *Becher* is applicable.

### E. Supplemental Claims.

The only two bases for jurisdiction alleged in the complaint are federal question, 28 U.S.C. § 1331 (federal RICO claims), and supplemental jurisdiction under 28 U.S.C. § 1367 (local law claims). Because the Court is dismissing plaintiffs' federal RICO claims for lack of an adequate substantive basis in law, the local law claims now utterly predominate in this action. Accordingly, the Court declines to exercise its supplemental jurisdiction over them in accordance with the rule of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir.1991).

### CONCLUSION

In view of the foregoing, defendants' Motion to Dismiss is hereby **GRANTED.** (Docket No. 3). Accordingly, all federal RICO claims are **DISMISSED WITH PREJUDICE** and all local law claims are **DISMISSED WITHOUT PREJUDICE.**

Judgment is to be entered accordingly.

IT IS SO ORDERED.