Wolfgang KELL, et al., Plaintiffs

v.

AMERICAN CAPITAL STRATEGIES, LTD., et al., Defendants

No. CIV. 00–1856(JP).

United States District Court, D. Puerto Rico.

Aug. 1, 2003.

Nicolás Nogueras–Cartagena, Esq., San Juan, PR, for Plaintiffs.

Luis R. Pérez–Giusti, Esq., Mignucci & Pérez–Giusti, Fernando J. Gierbolini–González, Esq., Rodríguez Marxuach Law Offices, San Juan, PR, for Defendants.

## *OPINION AND ORDER*

PIERAS, District Judge.

### I. INTRODUCTION

Before the Court are Co-defendants American Capital Strategies, Ltd. ("ACAS") and ACS Funding's ("ACS") Motion to Dismiss (**docket No. 91**); Plaintiffs Wolfgang Kell, Bettina Kell, and Euro–Caribe Packing Company's ("Euro–Caribe Packing") opposition thereto (docket No. 110); and Defendants' reply thereto (docket No. 114).

Plaintiffs filed an Amended Complaint on April 26, 2001, alleging that Defendants violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–7, by requiring Plaintiffs to conduct all of their financing business exclusively with Co-defendant ACAS and that Defendants committed fraud under Puerto Rico law[1]. Defen-dants move for dismissal of the Complaint, arguing that Plaintiffs' allegations, although copious, fail to allege the essential elements of a claim under the Sherman Act and have failed to plead their fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. In their Opposition, Plaintiffs argue that they have adequately pleaded a cause of action under the Sherman Act and do not focus their Commonwealth claims upon a theory of fraud but rather under the theory of lender liability.

### II. LEGAL STANDARD

In adjudicating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991). Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996) (quoting *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery

---

1. Plaintiffs argue, in their opposition to Defendants' motion to dismiss Plaintiffs' amended complaint, that their claims actually arise out of Lender Liability. Nevertheless, Plaintiffs have failed to make reference to any law other that the Sherman Antitrust Act in their Amended Complaint and the Court is now forced to conjure claims out of Plaintiffs' allegations. It is for this reason, that the Court finds that any unapparent claims under lender liability are inexorably intertwined with Plaintiffs' apparent theory of fraud, as Plaintiffs have presented them in their Amended Complaint.

under some actionable theory." *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). For the purposes of this motion, therefore, all factual allegations in the Complaint will be accepted as true and viewed in the light most favorable to Plaintiffs.

## III. FACTUAL ALLEGATIONS

The Court begins by noting that the densely narrative Amended Complaint is no model of clarity. It confusingly interchanges various names to refer to what the Court believes to be the Plaintiff corporation, omits key dates, and shifts backwards and forwards chronologically throughout. Notwithstanding, the Court has weeded carefully through the factual thicket, and gives the factual allegations a spin that most benefits Plaintiffs. The facts follow:

José Casanova ("Casanova") and Co-plaintiff Wolfgang Kell ("Kell") were the co-founders of Euro–Caribe Inc., a large producer of processed pork products that primarily served the Puerto Rico market. At an unspecified date, Co-defendant Ramón Domínguez recommended to Casanova and Kell that they acquire Federal Packing of Puerto Rico, Inc. ("Federal Packing"), a manufacturer of cooked meat products. Casanova and Kell agreed, and set about seeking financing for the purchase. Unable to borrow sufficient funds from local banks, and unwilling to raise money through third-party equity investment in the company, Casanova and Kell went to Co-defendant ACS. ACS developed for Casanova and Kell a "unique, 'one-stop-shop' structure utilizing senior and subordinated debt instruments with warrants, which provided needed capital without taking a majority ownership position." (Amd.Compl.¶ 6.)

On November 3, 1998, Euro–Caribe Inc. purchased Federal Packing's stock, and a merger between the two companies took place. The resulting entity became Euro–Caribe Packing Company, Inc. (*Id.* ¶ 18.) On that same date, a Credit and Note and Equity Purchase Agreement ("the Agreement") was entered into between Euro–Caribe Packing and ACS, containing the financing arrangement for Euro–Caribe Inc.'s acquisition of Federal Packing. (*Id.* ¶¶ 20–23.) Pursuant thereto, Plaintiffs sold to ACS Senior Term Notes in the amount of $500,000.00, Senior Subordinated Notes in the amount of $5 million, and Junior Subordinated Notes in the amount of $5 million, and further authorized the issuance and sale to ACS of stock purchase warrants for 318,965 shares of common stock. (*Id.* ¶¶ 20–21.) ACS also made available to Plaintiffs a $3 million revolving loan. (*Id.* ¶ 20.) ACS refused to record the detachable stock purchase warrants, against the advice of an independent auditing firm, KPMG. (*Id.* ¶¶ 28, 31.)

The Agreement provided that should a change of control take place in the Plaintiff corporation, or if the Plaintiff corporation publicly offered any of its securities, the due date on the monies lent would be accelerated. (*Id.* ¶ 22.) In addition, the Agreement also stated that if either Casanova or Wolfgang Kell ceased to be executive officers of Euro–Caribe Packing, the same would constitute a change of control. (*Id.*)

On May 21, 1999, ACS's representative member on the Board of Directors of Euro–Caribe Packing, Co-defendant Virginia Rollins ("Rollins"), told the Board that as part of the November 3, 1998 Agreement and take-over of Federal Packing, the shareholders of Euro–Caribe had turned over to ACS part of their business. (*Id.* ¶ 51.) Plaintiffs, however, did not understand the Agreement in this way. In

December 1999, ACS caused the firing of Euro–Caribe Packing's Chief Financial Officer, Angel García, and the hiring of Co-defendant Jim Battaglia ("Battaglia") of Resource Management Group as a financial consultant. (*Id.* ¶¶ 54 & 55.) At a Board meeting of Euro–Caribe Packing on March 29, 2000, ACS notified the Board that Plaintiffs were in default. Then, at a May 3, 2000 Board meeting, officers of ACS represented to Plaintiffs that they were in control of the Board in light of the notice of default, and added four new members to the Board. (*Id.* ¶¶ 59, 63.) The Complaint does not identify the four new Board members[2]. In addition, the Board dismissed Casanova from his position, and hired Co-defendant Jaime Ballester ("Ballester") to serve as President. (*Id.* ¶¶ 22, 33, 59.) At the same time, Defendants redefined Wolfgang Kell's duties, authority, and benefits. (*Id.* ¶¶ 33, 60.) On or after May 3, 2000, Co-defendant John Freal ("Freal"), an agent of ACS, was appointed Chairman of the Board of Euro–Caribe Packing. (*Id.* ¶ 62.) On June 22, 2000, Freal called a special meeting of the Board to be celebrated on June 27, 2000.(*Id.*) At the June 27, 2000 meeting, the Complaint alleges that the Board executed a document falsely representing that the Board had the authority to vote in the name of Casanova and Kell, in order to validate their conduct in adding four new members to the Board in the May 3, 2000 Board meeting. (*Id.* ¶ 63.)

While the Agreement provided that ACS could designate members of the Board of Directors of Euro–Caribe Packing, Plaintiffs allege that ACS violated the Agreement by asserting a majority control membership of the Euro–Caribe Packing Board of Directors in a manner that violated the Plaintiff corporation's By-laws. (*Id.* ¶¶ 39–

41, 45.) Plaintiffs further assert that ACS acquired control over the corporation by "falsely and intentionally misrepresent[ing]" that certain events occurred, triggering default. (*Id.* ¶ 43.) Additionally, the Complaint alleges that the terms of the Agreement imposed undue financial burdens upon Plaintiffs; that pursuant to the Agreement, Defendants "t[ook] advantage of their more expert skills and financing knowledge, than those of plaintiffs, in conspiracy between themselves, to deprive plaintiffs of their property rights and interests . . ."; and that ACS knew or should have known that Plaintiffs would be unable to meet their obligations under the Agreement. (*Id.* ¶¶ 24–25.) Finally, it is alleged that terms of the Agreement deterred other banks or lenders from extending credit to Plaintiffs. (*Id.* ¶¶ 26–27, 67.)

## IV. DISCUSSION

Defendants move for dismissal on the grounds that Plaintiffs have failed to properly allege a cause of action against them under the Sherman Act and that Plaintiffs have not reached the heightened pleading requirements for fraud found under the Federal Rule of Civil Procedure 9(b). The Court will assess the sufficiency of the Complaint under both the clearly alleged Sherman Act and under Plaintiffs' ambiguous commonwealth law claims.

### A. Sherman Antitrust Act

Plaintiffs maintain that Co-defendant ACS engaged in practices constituting an illegal "tie-in" in violation of Section 1 of the Sherman Act. Defendants move for dismissal of Plaintiffs' Sherman Act claim on the grounds that Plaintiffs do not allege the necessary elements of an antitrust cause of action for tying.

---

**2.** However, it appears that the Plaintiffs have subsequently removed the allegedly illegally appointed Board members. (Amd. Compl.¶ 15.)

■ Section 1 of the Sherman Act prohibits a seller from "tying" the sale of one product to the purchase of a second product if the seller thereby avoids competition in the tied product. *See Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 9–18, 104 S.Ct. 1551, 1556–61, 80 L.Ed.2d 2 (1984); *Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 16 (1st Cir.1994). The U.S. Supreme Court has held that,

> the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such 'forcing' is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.

*Jefferson Parish*, 466 U.S. at 12, 104 S.Ct. at 1558. There are four elements to a per se tying claim under the Sherman Act: (1) the tying and the tied products are actually two distinct products; (2) there is an agreement or condition, express or implied, that establishes a tie; (3) the entity accused of tying has sufficient economic power in the market for the tying product to distort consumers' choices with respect to the tied product; and (4) the tie forecloses a substantial amount of commerce in the market for the tied product. *Borschow Hosp. & Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 17 (1st Cir.1996); *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1178–79 (1st Cir.1994).

The Complaint states that Co-defendant ACS violated the Sherman Act as follows:

> Defendant ACAS has incurred in violation of the Sherman Act 15 USC sec. 1 et seq., anti-tying provisions, and Bank Holding Act, 12 USC Sec.1971–1978[sic] requiring plaintiffs to conduct all of their financing business exclusively with said lender and conspired to withhold credit to [sic] Plaintiff.

(Amd.Compl.¶ 70.) The Complaint further asserts that ACS engaged in a "predatory financing scheme" and purposely blocked Euro–Caribe Packing's attempt to refinance its debt with other lenders, in order to make Euro–Caribe Packing solely dependent on ACS for its financing. (*Id.* ¶¶ 24, 27, 52.) These allegations do not state an actionable claim for a tying violation.

■ The pleadings are flawed in that they fail to identify the existence of a second product or service which ACS would be tying. There can be no unlawful tying unless the arrangement involves two separate products. *See Jefferson Parish*, 466 U.S. at 19–21, 104 S.Ct. at 1562–63; *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *see also Cia. Petrolera Caribe, Inc. v. Avis Rental Car Corp.*, 576 F.Supp. 1011, 1015 (D.Puerto Rico 1983) (Pieras, J.). To ascertain whether one or two products are involved, the Court looks to the character of the demand for the two items. *See Jefferson Parish*, 466 U.S. at 19, 104 S.Ct. at 1562. Here, however, the Complaint simply neglects to articulate the two products or services that are allegedly subject to a tying arrangement. Plaintiffs gloss over this shortcoming in their Opposition, mere stating in conclusory terms that the Complaint sufficiently states a claim under the Sherman Act. Even assuming, however, that the two products were "financing" and "refinancing," the Complaint does not state whether the initial financing was sufficiently distinct from the refinancing to constitute a separate product. *Id.; see also Norte Car Corp. v. FirstBank Corp.*, 25 F.Supp.2d 9, 19 (D.Puerto Rico 1998). Plaintiffs' failure to link two separate product markets is fatal

to its cause of action. For this reason, the Court hereby **GRANTS** Defendants' motion to dismiss Plaintiffs' causes of action under the Sherman Clause.

## B. FRAUD

 The Court now turns its attention to Plaintiffs' claims falling under Commonwealth law. As stated earlier, Plaintiffs have failed to make reference, apart from their Sherman Act claims, under which laws they are bringing their remaining claims. The Court finds that the most liberal reading of Plaintiffs' allegations appear to create a claim of fraud against Defendants. However, the Court must keep in mind that, "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (quoting *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir.1988)).

 It is not until Plaintiff's opposition to Defendants' motion to dismiss that they posit a theory of lender liability. Although Plaintiffs refer to a number of cases in an attempt to support their theory[3], they have failed to make any reference to the Puerto Rico Civil Code or Puerto Rico jurisprudence in support of this claim. More specifically, after the deluge of non-precedential case law presented by Plaintiffs they state that "[Plaintiffs] will not partake an [sic] analysis of each factual allegation of the Amended Complaint, because of their extention [sic]." (Plaintiff's Opp., docket No. 110, at 11). Nevertheless, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). "Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim." *Id.*, at 23 (citing *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957) (a court pondering a Rule 12(b)(6) motion should not grant credence to a "footless conclusion of law")). Ultimately, the Court finds that Plaintiffs' allegations, if anything, attempt to present a claim of fraud against Defendants. The First Circuit has held that "where fraud lies at the core of the action, Rule 9(b) applies." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985). "[T]he rule does not permit a complainant to file suit first, and subsequently to search for a cause of action." *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 (D.R.I.1984). It is for this reason, that the Court analyzes Defendants' motion to dismiss and subsequently Plaintiffs' allegations under the lens of Rule 9(b) of the Federal Rules of Civil Procedure[4].

---

**3.** The Court notes that none of these opinions derive from actions from within this Circuit let alone this District and as such do not have any precedential effect upon this Court.

**4.** The Court notes that 31 P.R. Laws Ann. § 3018 encompasses the theory of "dolo" and that Puerto Rico's Supreme Court had described "dolo" as the genus and fraud as one of several species along side with deceit, false representations, undue influence, and other insidious machinations. *See Márquez v. Torres Campos*, 111 P.R. Dec. 863 (Puerto Rico 1982); *see also* 92 F.Supp.2d 8, 19 (D.Puerto Rico 2000). In the case at bar, Plaintiffs have failed to specifically refer to a theory of "dolo" but have made repeated references to fraud. Therefore, the Court need not attempt to parse Plaintiff's allegations into any other species of "dolo" except fraud. Furthermore, although Commonwealth law governs all is-

Rule 9(b) imposes a heightened pleading requirement on plaintiffs alleging fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b) (West 2003). The purposes of Rule 9(b)'s particularity requirement are threefold;

> (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims as pretext for discovery or "strike suits", and (3) to safeguard defendants from the reputation damage of frivolous charges.

*Efron v. Embassy Suites (Puerto Rico), Inc.,* 47 F.Supp.2d 200, 204 (D.Puerto Rico 1999) (citing *New England Data Services v. Becher,* 829 F.2d 286 at 289 (1st Cir. 1987)); *see also Microsoft Corp. v. Computer Warehouse,* 83 F.Supp.2d 256, 262 n. 2 (D.Puerto Rico 2000). Defendants' motion argues that the first rationale comes into direct issue in the current case. The Court must therefore look not only at applicability of Rule 9(b) but rather at whether Plaintiffs have satisfied its pleading requirements.

In a recent opinion this Court set the standard against which a plaintiff's allegations must be measured to survive the heightened scrutiny of Rule 9(b). The Court there held that:

> In order to survive a motion to dismiss for failure to plead fraud with particularity, the plaintiff must have included specific pleadings as to time, place and contents of the false representations, as well as the identity of the person or persons making the misrepresentation and what the person or persons obtained thereby.

sues related to the substantive elements of fraud and the burden of proving fraud at trial, "[f]ederal law governs the procedure and requirements for pleading fraud." *Generadora*

*Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.,* 92 F.Supp.2d at 18 (citing *See McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228–229 (1st Cir.1980); *Verrecchia v. Paine, Webber, Jackson and Curtis,* 563 F.Supp. 360, 363 (D.Puerto Rico 1982)). Defendants argue that Plaintiffs use vague and conclusory language to suggest that misrepresentations have occurred without ever identifying those misrepresentations' supposed substance. While the Court agrees that Plaintiffs' allegations are not the model of clarity, the Court does not find them to be completely vague.

As an example, Plaintiffs contend that Defendants forced the acceleration of the notes by forcing a change in control of the Company: "[Defendants] have illegally caused said 'change of control' by causing the illegal dismissal of Mr. Casanova, and by curtailing, limiting and controlling the executive functions and authority of Plaintiff Mr. Wolfgang Kell, having taken said defendants [sic] full, undue and illegal control of all of the Company's operations, personnel and assets in violation of the Agreement between the parties and of their fiduciary duties, in bad faith and through, an illegal predatory financial scheme." (Amd.Comp.¶ 24). Plaintiffs later claim that

> [i]n furtherance of its fraudulent scheme to take the Company's and Plaintiffs [sic] property, defendant lender requested the Company, by the middle of 1999 to refinance part of the debt and then started requiring irreasonable [sic] conditions to other banks, refusing to enter into reasonable financial arrangements and by unduly burdening the Company with uncalled for, [sic] restrictions, lack

*De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.,* 92 F.Supp.2d 8, 18 (D.Puerto Rico 2000).

of funding control of the operations, bad faith handling of the terms of the several agreements and violating its fiduciary duties with the Company and Plaintiffs.

(Amd.Compl.¶ 27). Along the same vein, Plaintiffs allege that:

[Defendants] imposed undue financial burdens on the Company, impossible to meet and contrary to Plaintiffs objectives for survival of the company, taking advantage of their more expert skills and financing knowledge, than those of plaintiffs, in conspiracy between themselves, to deprive plaintiffs of the property rights and interests, and through a predatory financing scheme, creating a financing crisis that would enhance their profit making way beyond their normal interests as lenders, and in order to take full control and ownership of the Company's production and sales market in Puerto Rico, and of its assets and cash flow.

(Amd.Compl.¶ 24). While these three allegations may not fit perfectly within the confines of Rule 9(b), they undoubtedly capture the spirit of the rule. Essentially, Plaintiffs have alleged that Defendants manipulated them and the agreement entered into by the parties to gain an unfair advantage over Plaintiffs and to ultimately take over Plaintiffs' company. The above references to the Amended Complaint demonstrate the manifestations of this alleged fraud and how it was conducted.

The Court does not find that Plaintiffs have cleared the Rule 9(b) hurdle by a high degree but it has been cleared, nevertheless. Perhaps if Plaintiffs had drafted their complaint in a more clear and concise manner, these issues would not even be before the Court at this time. Nevertheless, the Court hereby **DENIES** Defendants' motion to dismiss Plaintiffs' remaining claims.

## V. CONCLUSION

In view of the foregoing discussion, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, and hereby **DISMISSES** Plaintiffs' claims under the Sherman Act **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**